SHARON VALDEZ *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF OTTAWA *et al.*, Defendants-Appellees.—(GERRY KAMMERER *et al.*, Defendants.)

Third District    No. 81-621

Opinion filed April 22, 1982.

HEIPLE, J., specially concurring.

Jack Hansel, Mike Braun, Kenneth A. Leshen, and Bernard A. Poskus, all of Prairie State Legal Services, Inc., of Ottawa, for appellants.

John A. Hayner, of Warren, Hayner & Baxter, P. C., of Ottawa, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

The plaintiffs filed suit against the defendants, alleging they denied the plaintiffs due process when they seized and destroyed the plaintiffs' automobile. The trial court granted the defendants' motion for summary judgment and the plaintiffs appeal.

There is no serious dispute over the facts. Robert Valdez, a plaintiff and the owner of a 1966 Pontiac LeMans, left the automobile on the shoulder of Frontage Road (south of Interstate 80 and just west of Illinois 23) in La Salle County in May of 1979 when it suffered mechanical problems. At the time, the car displayed valid license plates that were registered to the plaintiff at his current address. Sometime later, the Ottawa Police Department placed a sticker on the car. The sticker said the automobile would be towed unless it was moved.

The record is unclear on the length of time the vehicle remained on the shoulder, although the parties agree it was approximately one week. When this week had passed, the Ottawa Police Department authorized Kammerer's Auto Wrecking (the proprietors, Gerry and Robert Kammerer, are also defendants in this action) to tow the vehicle and store it on their property.

A friend of the plaintiffs spotted the car at Kammerer's Auto Wrecking and relayed this information to them. Sharon Valdez, Robert's wife and a party to this suit, called Kammerer's to find out if they would allow her husband to work on the car in their lot. Kammerer's denied permission to do so and told Sharon Valdez that a $70 towing fee had to be paid before she and her husband could move the vehicle. Mrs. Valdez asked if they could pay the towing fee after they claimed the car, but Kammerer's would not permit it. She explained to Kammerer's that she and her husband could not afford the towing fee, but that they did want the car. Kammerer's said they would hold the car until the plaintiffs could pay the fee.

In late May, the plaintiffs purchased a 1969 Oldsmobile. Mrs. Valdez went to Kammerer's lot and removed the plates from the Pontiac in order to transfer them to the newly purchased Oldsmobile. Mrs. Valdez told Gerry Kammerer that she still wanted the Pontiac.

Six weeks later, Kammerer's requested a disposition permit from the police department. Thomas Kossaris, an Ottawa police officer and a defendant in this action, unsuccessfully tried to telephone the plaintiffs concerning the disposition of the car. Subsequently, the police department issued the permit, and Kammerer's destroyed the automobile in July 1979. Other than Kossaris' phone call, the police made no attempt to contact the plaintiffs.

The plaintiffs began this action in November 1979. Their amended complaint asks for damages for the loss of the vehicle, and bases its prayer for relief on the fourteenth amendment to the United States Constitution, 42 U.S.C. sec. 1983 (1976), section 2 of article I of the Constitution of the State of Illinois, and Section 4—201 *et seq.* of the Illinois Vehicle Code (Ill. Ann. Stat., ch. 95½, par. 4—201 *et seq.* (Smith-Hurd 1971 and Cum. Supp. 1981)).

The plaintiffs moved for summary judgment on the issue of liability, and the defendants moved for summary judgment on all issues. The trial court granted the defendants' motion, finding the plaintiffs left their vehicle unattended for so long that they had constructive notice that the police would tow the car. The court also found the plaintiffs abandoned the vehicle, thus preventing an action for damages for its loss. As to Kossaris, the court granted his motion for summary judgment, ruling that he was not the chief of police during the periods of time material here and that he was immune from suit under the doctrine of qualified immunity. The plaintiffs now appeal.

The principal issue in this appeal is whether the defendants violated the plaintiffs' constitutional rights when they seized their automobile without giving them prior notice of the seizure. The fourteenth amendment provides that:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., amend. XIV, sec. 2.)

Congress, under its fourteenth amendment powers, prohibited any deprivation of constitutional rights by any person acting under color of State law:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress." 42 U.S.C. sec. 1983 (1976).

■■■ Due process is not an inflexible standard and "does not require a trial-type hearing in every conceivable case of government impairment of private interest." (*Cafeteria & Restaurant Workers Union v. McElroy* (1961), 367 U.S. 886, 894, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748.) Nonetheless, due process requires that "at a minimum * * * deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 313, 94 L. Ed. 865, 873, 70 S. Ct. 652, 656-57.) The notice must be reasonably calculated to convey the necessary information and to afford the interested parties a reasonable time for a hearing. (339 U.S. 306, 314, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657.) Those parties must be given notice and an opportunity before the deprivation takes place, unless there exists extraordinary circumstances requiring immediate action to protect a valid governmental interest. (*Boddie v. Connecticut* (1971), 401 U.S. 371, 378-79, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786; *Fuentes v. Shevin* (1972), 407 U.S. 67, 81-82, 32 L. Ed. 2d 556, 570-71, 92 S. Ct. 1983, 1994-95.)* Furthermore, there is no question that ownership of an automobile and continued access to it is a property interest within the protection of the fourteenth amendment (*Stypmann v. City & County of San Francisco* (9th Cir. 1977), 557 F.2d 1338, 1342), and whether the deprivation will be permanent or temporary is immaterial. (*Fuentes v. Shevin* (1972), 407 U.S. 67, 82, 32 L. Ed. 2d 556, 571, 92 S. Ct. 1983, 1995.) Towing a car without prior notice to the owner is a violation of due process rights.

■■ In the case at bar, the defendants invaded the constitutional rights of the plaintiffs when it seized, towed and refused to relinquish the auto before payment of a towing fee. The city does not seriously contest the necessity for due process when it seizes and tows vehicles. The question,

---

* The special concurrence complains that *Boddie* and *Fuentes* do not have any relationship to this case, because those cases did not involve towing of automobiles. This point is not relevant. *Boddie* and *Fuentes* rest on a basic rule of constitutional law that transcends whatever peculiar rights or interests may be at stake in those cases: Government may not interfere with certain private rights and interests without first utilizing reasonable notice and a meaningful opportunity to be heard or act. See, *e.g., Goss v. Lopez* (1975), 419 U.S. 565, 42 L. Ed. 2d 725, 95 S. Ct. 729 (due process requirements attach to the right to attend public school and be free from arbitrary suspension); *Wisconsin v. Constantineau* (1971), 400 U.S. 433, 27 L. Ed. 2d 515, 91 S. Ct. 507 (due process requirements apply to government actions interfering with an individual's reputation); *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (due process requirements attach to beneficiary interests of trusts); and a myriad of other situations.

therefore, is whether the defendants gave the plaintiffs adequate notice that the car would be towed or whether an extraordinary situation existed necessitating immediate seizure and removal of the vehicle.

On the latter question, there is no evidence in the record that the plaintiffs' auto posed any substantial danger to traffic as it rested on the shoulder of the road. Because this case is before us on summary judgment, we take all factual inferences most favorable to the plaintiffs. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397.) The road is near an International Harvester plant and the Hines Lumber Company, indicating that high speed travel is unusual. The car was parked completely on the shoulder. The fact that the police saw no need to disturb the car for at least one week is a strong indication that no emergency existed.

The city places primary reliance on the trial court's finding that the plaintiffs had constructive notice of the possible seizure and tow. The city argues the plaintiffs should have known that if they left the car on the shoulder of the road long enough, the police would tow it away. The tow sticker the police attached to the car is additional evidence of the plaintiffs' notice. This argument is without merit. The auto was currently registered and the police had the plaintiffs' name and address. Notice must be reasonably calculated to actually apprise the property owner of the opportunity to contest the government's proposed action. If the plaintiff's residence is readily and easily available, as is true here, the city may not rely on fortuitous or constructive notice to satisfy the due process clause. (See *Robinson v. Hanrahan* (1972), 409 U.S. 38, 40, 34 L. Ed. 2d 47, 49, 93 S. Ct. 30, 31; *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 316-18, 94 L. Ed. 865, 874-75, 70 S. Ct. 652, 658-59.) At a minimum, notice by certified or registered mail would have been *appropriate* in the instant case. *Mullane*.

■■ This does not necessarily mean the State may never remove a vehicle before giving the owner notice. Clearly there are circumstances where a vehicle may be parked in a manner that endangers public safety or impedes efficient movement of traffic. For example, a vehicle may be blocking traffic, parked on a snow route during a snow emergency or standing on the shoulder of an interstate highway for a prolonged period of time. It is not possible or desirable to detail every conceivable situation in which an automobile may be towed without prior notice to the owner. The guiding principle must always be whether or not the vehicle, as it stands, jeopardizes public safety by either creating an unsafe condition or significantly hindering the efficient movement of traffic. The towing of parked vehicles that do not fall within these categories without pre-tow notice and opportunity for a hearing violates the fourteenth amendment to the Constitution.

If an auto is towed without prior notice to the owner, due process requires prompt notice and an opportunity to a hearing before the government makes any disposition of the vehicle. Additionally, the owner must have an opportunity to contest the seizure and tow before he can be required to pay any charges or fees. "Seizure of property without prior hearing has been sustained only where the owner is afforded prompt post-seizure hearing at which the person seizing the property must at least make a showing of probable cause." (*Stypmann v. City & County of San Francisco* (9th Cir. 1977), 557 F.2d 1338, 1344 (statute which requires paying of storage and towing fees before a vehicle can be recovered held invalid). Accord, *Huemmer v. Mayor & City Council of Ocean City* (4th Cir. 1980), 632 F.2d 371.) In the case at bar, therefore, the defendants violated the plaintiffs' right to due process when they destroyed their automobile without any notice, even if immediate seizure and tow was proper.

■■ The plaintiffs also appeal from the trial court's summary judgment in favor of Officer Kossaris. The trial court ruled that, contrary to an allegation in the complaint, Kossaris was not chief of police at the time of the events complained of (though he holds that position now), and that he was immune from suit under the doctrine of qualified immunity. The plaintiffs correctly argue that the defendant's position within the police department is immaterial to his liability under 42 U.S.C. sec. 1983. Kossaris' liability is predicated on his own actions and decisions. If the defendant acted under color of State law and deprived the plaintiffs of a constitutional right, he is liable under section 1983. *Gomez v. Toledo* (1980), 446 U.S. 635, 640, 64 L. Ed. 2d 572, 577, 100 S. Ct. 1920, 1923.

■■ Moreover, the individual defendants can assert qualified immunity only by showing they acted in good faith and with probable cause. (*Pierson v. Ray* (1967), 386 U.S. 547, 554-57, 18 L. Ed. 2d 288, 295-96, 87 S. Ct. 1213, 1217-19.) These subjective and objective elements of qualified immunity should be examined by a trier of fact after all the evidence is presented, rather than by appellate review of a summary judgment. It is worth noting, however, that the liability of the individual defendants is relatively unimportant in this case. The city of Ottawa is also a defendant in this case, and it cannot assert qualified immunity as a defense to liability under section 1983. *Owen v. City of Independence* (1980), 445 U.S. 622, 63 L. Ed. 2d 673, 100 S. Ct. 1398.

Finally, the plaintiffs appeal the trial court's denial of their motion for summary judgment against the city on the issue of liability. The resolution of the defendant's liability is better left to the trial court after all evidence is presented to the trier of fact. As the plaintiffs concede in their brief, the record before this court is skeletal.

The trial court's finding of summary judgment in favor of the defendants is reversed and the cause is remanded for trial.

Reversed and remanded.

STOUDER, J., concurs.

JUSTICE HEIPLE, specially concurring:

In early May of 1979, plaintiffs' 1966 Pontiac conked out while being operated on Frontage Road in Ottawa. The car was abandoned on the shoulder of the road by the plaintiffs. Sometime later, the Ottawa police discovered the car and placed a tow sticker on the windshield. The sticker contained language to the effect that the automobile would be towed away unless moved by the owner. A full week or more elapsed after the tow sticker was placed on the windshield. Then, the police authorized Kammerer's Auto Wrecking to tow the vehicle and store it in their auto salvage yard.

At no time did the police or the junkyard ever contact the plaintiffs to advise them that the car was going to be towed or, after the fact, that the car had been towed. The owners, however, had actual notice of the tow after the car was in the junkyard. During the approximate period of two months that the car was in the junkyard, Mrs. Valdez twice visited the yard, once to find out if her husband could work on the disabled car in the junkyard, and again to remove the license plates from the car to place them on a different car. Despite actual notice as to the actual location of the car and the fact that the plaintiffs could remove it if they would pay a $70 towing fee, the plaintiffs took no other action.

Later, in July, the junkyard owners destroyed the car after first obtaining a destruction permit issued by the Ottawa Police Department. No notice of the application for the permit, the issuance of the permit, nor the impending destruction of the car was given to the owners prior to the destruction.

The only real issue in this appeal is whether plaintiffs were entitled to notice and an opportunity to be heard prior to the destruction of their property. They were. Failure to so advise them was clearly wrong. I cannot agree, however, with the breadth of the language which my colleagues choose to acknowledge this entitlement.

My colleagues assert that: "Towing a car without prior notice to the owner is a violation of due process rights." Such proposition is false. It is not a correct statement of the law. To bolster their assertion, the majority cite *Boddie*, a case involving State welfare assistance; and *Fuentes*, a replevin case, neither of which bears any relationship to the facts of the case at hand.

The police and the towing company acted reasonably and within the letter of the law in towing away the plaintiffs' car after it had been abandoned in an inoperable condition along the shoulder of the road. There is no statute, State or Federal, that would have required the Ottawa Police Department to give advance notice of this tow.

Although appellants have cited the ruling of a Federal district judge supporting their rationale, such a decision is neither controlling nor authoritative so far as the Illinois courts are concerned. And the rationale of that decision is not persuasive. No reported case from an Illinois reviewing court has been cited which supports the plaintiffs' position. Nor has a supporting decision been cited from our Seventh U.S. Circuit Court of Appeals or the United States Supreme Court. The absence of such authority is not surprising. A rule of law which would require advance notice to the owner of a vehicle which had been abandoned on a public right-of-way that would require the government to give advance notice of a proposed tow would be a radical departure from existing law, practice and precedent. Such advance notice would serve no useful purpose either public or private. A requirement of pre-tow notice could, indeed, be detrimental to both public and private interest in the use of the public ways.

Section 4—201 *et seq.* of the Illinois Vehicle Code addresses the problems of abandoned, lost, stolen, or unclaimed vehicles. (Ill. Rev. Stat. 1979, ch. 95½, par. 4—201 *et seq.*) This statute makes it clear that nobody has the right to leave his car on a public thoroughfare unclaimed and unattended indefinitely. In fact, the Ottawa police were empowered to tow plaintiffs' vehicle once it was left unattended for more than 24 hours. Ill. Rev. Stat. 1979, ch. 95½, par. 4—203(c).

When, however, the city and the junkyard owners combined their efforts to destroy the car without giving notice of the impending destruction and affording the owners an opportunity to contest such destruction, the defendants went too far. The destruction of the car in this case deprived the plaintiffs of both procedural and substantive due process of law under both the Illinois and the United States constitutions.

Accordingly, I concur with the reversal and remand.

I further agree that any liability of defendant Kossaris requires an examination of the defense of qualified immunity which he claimed. (*Scheuer v. Rhodes* (1974), 416 U.S. 232, 245, 40 L. Ed. 2d 90, 102, 94 S. Ct. 1683, 1691.) The applicability of such defense turns on the question of Officer Kossaris' good faith, a question of fact.

Limited to the views expressed above, I concur with the reversal and remand directed by the majority.