CHARLES LESPERANCE, Plaintiff-Appellant, *v.* CHARLOTTE L. WOLFF *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 78-1956

Opinion filed December 11, 1979.

Terrence E. Leonard, of Chicago, for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and David A. Novoselsky, of counsel), for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Florence and Charles Lesperance were injured when their automobile collided with a car owned by David Fruchey and driven by

Charlotte Wolff, defendants here. Upon trial, the jury returned verdicts for each plaintiff—Florence Lesperance in the amount of $4500, and Charles Lesperance in the amount of $4000; but the jury answered a special interrogatory in a contradictory manner when it found Charles, the driver of the car, guilty of contributory negligence. In accord with the answer to the special interrogatory, the trial judge vacated that part of the general verdict which had awarded damages to Charles Lesperance. On appeal, Charles Lesperance (hereafter plaintiff) contends that the general verdict should be reinstated because the jury's finding charging him with contributory negligence was against the manifest weight of the evidence. Alternatively, plaintiff submits that the cause should be remanded for a new trial either as to damages alone or on all issues.

On February 16, 1974, Charlotte Wolff, having received a learner's permit to drive a car, was practicing driving an automobile owned by her passenger, David Fruchey. Fruchey and Wolff were proceeding north on Lockwood Avenue when they arrived at the stop sign at Addison, an east-west street. They observed plaintiff's vehicle west about a block away, coming toward the intersection in the eastbound lane nearest the center at about 30 miles per hour. Sensing that she could safely complete the turn, Wolff took a very slow left turn into the westbound lane nearest the center line but failed to release the steering wheel to straighten the car and collided with plaintiff's vehicle.

At trial, plaintiff called Wolff and Fruchey as adverse witnesses to testify to the events preceding the collision. Wolff, in addition to the above account, stated that her automobile was about a car's length from the Addison-Lockwood intersection when the accident occurred. Plaintiff's car was completely within the eastbound lane at the time. Wolff estimated her speed as being no more than five miles per hour when she oversteered, crossed the center line, and collided with plaintiff's vehicle.

Fruchey's testimony was substantially the same as that of Wolff, but he added that only about half of his car was in the westbound lane after the collision. In his estimate, the accident occurred 20 to 25 feet beyond the intersection, and "a few seconds, five seconds" after his car crossed the center line. Fruchey was unsure but thought that plaintiff's car was 30 to 35 feet away when Wolff crossed from the westbound into the eastbound lane. He did not notice any decrease in the speed of plaintiff's automobile prior to impact.

Plaintiff testified that the pavement was dry, the weather was clear, and his view was unobstructed at the time of the accident. He saw defendant's car as it stopped at the stop sign and pulled out onto Addison. He continued to watch as it made the turn into the westbound lane, failed to straighten, came across the center line, and hit his car head-on. Plaintiff thought that the defendant's vehicle was increasing in speed as it crossed

the center line, possibly to as much as 20 miles per hour. Plaintiff emphasized that he "had no chance to move," put on the brakes or sound his horn. On cross-examination plaintiff reiterated that the accident happened one to two car lengths from the intersection and that he saw defendant's car for the first time when it was 250 feet away at the stop sign. Defendants' attorney produced a deposition taken three years before the trial in which plaintiff stated that he first saw defendant's car when it was 50 to 55 feet away, making its turn into the westbound lane. When asked about the discrepancy in the statements, plaintiff responded:

"A. [Plaintiff] Well, U [sic] must have given it then.

Q. [Defense attorney] And how fast were you going when you first saw the other car?

A. Approximately 30 miles an hour.

Q. So, the very first time you saw the other car, it was 55 feet away, and you were going 30 miles an hour, is that your testimony?

A. Well, it is, yes.

Q. Now, you didn't see that other car begin to pull out of the stop sign, did you? Well, did you?

A. Yes.

Q. Wasn't it already into its turn the first time you saw it?

A. No.

Q. All right. Again, counsel, on page 10. Again, at your deposition, Mr. Lesperance, do you remember being asked this question under oath and giving this answer:

'Q. And where was the other car when you first saw it?

A. The other car had made a turn to go west on Addison Street, and it was halfway into the turn when I first noticed it.'

Did you give that answer to that question?

A. Yes, if that is what you have there.

Q. And, in fact, by the time you first saw the other car, part of it was already over the centerline, starting to make its left turn to go westbound on Addison, wasn't it?

A. Yes.

* * *

Q. And, in fact, only about the rear 25 percent of the rear quarter of Dave Fruchey's car was still in your lane as he was making his left turn when you first saw his car, is that also true?

A. That would be correct.

Q. What speed were you going at the time of the cars' actually came together?

A. Approximately it would have to be 30 or a little less, approximately.

Q. About 30 miles an hour?

A. Approximately.

Q. So, your car was going the same speed at the time the cars came together as it was the very first time you saw the other car, is that what you are saying?

A. Things happened so fast. You react with a normal driving condition. I wasn't speeding.

Q. Mr. Lesperance, were you going at about the same speed at the time the cars came together?

A. Approximately.

Q. Excuse me?

A. Approximately.

Q. For her [*sic*] record, let me finish my question, okay?

A. Yes.

Q. Mr. Lesperance, were you going about the same speed when the cars came together as you were the very first time you saw the other car?

A. Yes.

\* \* \*

Q. How much time went by from when you first saw the other car, from when you first saw the other car until the two cars came together?

A. A second or two."

On redirect, plaintiff once again stated that he had seen defendant's car turn out of Lockwood. Defense counsel objected, stating that that was not plaintiff's testimony, but the objection was overruled. Plaintiff also affirmed the earlier testimony by both himself and defendants that the Fruchey car had been completely within the westbound lane after making the turn onto Addison and prior to crossing over the center line.

In regard to plaintiff, the jury answered a special interrogatory finding him contributorily negligent, but also returned a general verdict in his favor. Because of the contradictory findings, judgment on the general verdict was vacated to comply with the answer to the special interrogatory and a post-trial motion by plaintiff was denied. This appeal followed.

■■ The threshold question is whether the jury's answer to the special interrogatory, which found plaintiff to have been contributorily negligent, was supported by the evidence adduced at trial. For if there was evidentiary support in the record for the jury's determination, then the mere inconsistency of the verdict and the interrogatory answer would neither mandate reversal nor necessitate a new trial. (See *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 266, 226 N.E.2d 16.) Instead, the proper procedure would be that followed by the trial judge here, who, acting in

accord with section 65 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 65), vacated the general verdict as it pertained to plaintiff to correspond to the answer to the special interrogatory. However, the mandate of section 65—that where the answer to a special interrogatory is inconsistent with the general verdict, the special finding controls—has no effect if the special interrogatory and answer are either contrary to or unsupported by the evidence. (*Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 106, 210 N.E.2d 191; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 457, 308 N.E.2d 167.) Thus, we return to the initial question: whether the jury's determination that plaintiff was contributorily negligent had evidentiary support in the record.

All of the witnesses agreed that plaintiff, at the time of the accident, was driving at about the speed limit and was in his own lane. The conditions that day were good, and did not call for a lower speed or any additional caution. There was every indication that defendant's car was going directly into the westbound center lane since the car came fully within that lane prior to the accident. The time of danger was as Wolff did not release the wheel and the car continued to turn and began to cross the east-west center line into the eastbound lane. That would be the first moment that an approaching motorist would realize that the developing situation was not the everyday usual occurrence of a car making a turn into the other side of a multilane roadway. Therefore, plaintiff's activities at that point must be examined if a determination relative to contributory negligence is to be made. The only testimony offered on this point was by plaintiff who declared that he did not have time to do anything, to sound his horn, or to put on the brakes. His testimony is corroborated by the distances and speeds to which the witnesses testified. Fruchey testified that his car did not cross the center line until plaintiff's car was only 30 to 40 feet away. Plaintiff affirmed this estimate when he said that at the time Fruchey's car crossed the center line, his own car was about 55 feet from the intersection. All witnesses agreed that the collision occurred between one and two car lengths from the intersection.

At plaintiff's estimated speed (30 m.p.h.), he would have approximately one second to avoid the collision. At Wolff's estimated speed (5 m.p.h.), half of her car would cross into the eastbound lane in a maximum of 1½ seconds and even more quickly if plaintiff's estimate of 20 m.p.h. were taken as true. Fruchey's estimate that from the time the car started across the line to the time of collision was from 2 to 5 seconds, taken in the light of his own undisputed testimony as to distances, is probably more accurate as to the shorter time. Thus, plaintiff had from one to two seconds to avoid the collision.

It is well established that a driver's failure to take the perfect alternative is not contributory negligence.

" '[A] party having given another reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind * * *.' * * * [Plaintiff] had to act in a sudden emergency, and his act is not to be viewed in the light of after events but judged under all the circumstances by the standard of what a prudent person would have been likely to do under the same circumstances." *Skala v. Lehon* (1930), 258 Ill. App. 252, 258-59, *aff'd* (1931), 343 Ill. 602, quoting in part from *Wesley City Coal Co. v. Healer* (1876), 84 Ill. 126, 129.

■■ Further, there is nothing in the record, outside of defense counsel's unsupported statements, to contradict plaintiff's statements that he had no time to take evasive action. Defendants contend that with a clear lane to the right of his car, plaintiff should have swerved. Not only does the testimony as to distances and times indicate that a swerve into the right lane would have produced a rear end rather than front end collision; plaintiff cannot be reasonably expected to react as a professional automobile driver and instantaneously redirect his car. The standard of care to which the jury held plaintiff seems manifestly unreasonable. It has generally been held that a sudden swerve into plaintiff's right of way by an approaching vehicle does not give rise to contributory negligence. See, *e.g., Sughero v. Jewel Tea Co.* (1966), 66 Ill. App. 2d 353, 214 N.E.2d 512, *aff'd* (1967), 37 Ill. 2d 240, 226 N.E.2d 28; *Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 253 N.E.2d 699; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 308 N.E.2d 167; *Quaranta v. Reardon* (1975), 28 Ill. App. 3d 951, 329 N.E.2d 510; *Walls v. Hofbauer* (1977), 45 Ill. App. 3d 394, 359 N.E.2d 1037; *Breckir v. Lewis* (1964), 21 App. Div. 2d 546, 251 N.Y.S. 2d 77; *Roberts v. Greyhound Lines, Inc.* (Ky. 1968), 427 S.W.2d 804; *Bell v. Kenney* (6th Cir. 1933), 67 F.2d 896; *Boerner v. Estate of Lambert* (1973), 9 Wash. App. 145, 510 P.2d 1157.

Those cases cited by defendant for the proposition that failure to swerve or avoid the collision amounted to contributory negligence are all distinguishable on their facts. *Harrison v. Pullens* (1967), 83 Ill. App. 2d 245, 227 N.E.2d 550, involved a slowly approaching vehicle 150 feet away from plaintiff's automobile. Further, there was some evidence that plaintiff admitted that he could have avoided the other vehicle. The other cases cited by defendant involve collisions with cars on the same side of the road, proceeding in the same direction, where one might normally anticipate movement by standing or moving cars in the same lane of traffic. (*Waldron v. Hardwick* (1968), 99 Ill. App. 2d 36, 240 N.E.2d 772; see also *Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099, 288 N.E.2d 683.) Because we can find no evidentiary support for a finding of contributory negligence, the special interrogatory must be set aside.

■■ The issue now arises as to the proper relief to be granted plaintiff,

whether to reverse and remand for a new trial or whether to enter judgment for the plaintiff. Defendants contend that *Borries v. Z. Frank, Inc.* (1967), 37 Ill. 2d 263, 226 N.E.2d 16, mandates that the only relief available is remandment for a new trial since "there is no corresponding authority for a trial court to enter judgment in accordance with a general verdict when it decides an inconsistent finding is against the manifest weight of the evidence." (37 Ill. 2d 263, 266; *see also Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103, 109, 210 N.E.2d 191 (Underwood, J., concurring); *Starbuck v. Chicago, Rock Island & Pacific R.R. Co.* (1977), 47 Ill. App. 3d 460, 362 N.E.2d 401.) We would agree that where a special finding is merely against the manifest weight of the evidence, remandment for a new trial would be the proper remedy. As was noted in *Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 310, 356 N.E.2d 32, the evidentiary standards relating to the granting of a new trial in contrast to the direction of a verdict are different. Citing the differences between the two situations originally noted in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10, 229 N.E.2d 504, *Mizowek* indicated that the manifest weight of the evidence standard relates to ordering a new trial. However where "all of the evidence, when viewed in its aspect most favorable to the [defendant], so overwhelmingly favors [plaintiff] that no contrary verdict based on that evidence could ever stand," then the most "fair and expeditious termination of litigation" would mandate that we direct the trial court to enter judgment in favor of plaintiff. 37 Ill. 2d 494, 510; *see also Kirby v. Swedberg* (1969), 117 Ill. App. 2d 217, 221, 253 N.E.2d 699; *Zygadlo v. McCarthy* (1974), 17 Ill. App. 3d 454, 458, 308 N.E.2d 167; *Leonard v. Pacific Intermountain Express Co.* (1976), 37 Ill. App. 3d 995, 1005, 347 N.E.2d 1099.

The evidence already presented, including that of defendants themselves, substantiates plaintiff's testimony concerning due care. He was in his proper lane, obeying the speed law, and was confronted with a car which suddenly swerved in front of him. We believe that the evidence here, when viewed most favorably to defendant, so overwhelmingly supports plaintiff's claims of due care, that a finding of contributory negligence cannot possibly stand.

Accordingly, we remand to the trial court with directions to enter judgment in favor of plaintiff.

Reversed and remanded with directions.

DOWNING and HARTMAN, JJ., concur.