DIANA BALFOUR, Plaintiff-Appellee, *v.* CITGO PETROLEUM CORP. *et al.*, Defendants-Appellants.

First District (4th Division)   No. 82—1584

Opinion filed June 30, 1983.

Morgan, Tuchow & Karzov, of Chicago (Arnold J. Karzov and Douglas Graham, of counsel), for appellants.

Corboy & Demetrio, of Chicago (Philip H. Corboy and David A. Novoselsky, of counsel), for appellee.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Plaintiff was severely injured on December 6, 1976, in a collision between her automobile and a tank trailer when one or both of the vehicles crossed the center line on a snowy, icy road. The jury found for plaintiff in the amount of $120,000; however, since it found both parties 50% negligent, the award was reduced to $60,000. Only the defendants appeal.

On appeal defendants contend:

(1) the trial court erred in permitting the testimony of Ronald Janis because he did not witness the accident; he did not identify the truck he saw as the one involved in the accident; the truck he saw crossed the center line some undetermined distance east of the accident; the truck driver had been removed from the scene before he arrived; he testified as to tire tracks and a mound of snow without their being tied to the accident;

(2) since the issue was which vehicle crossed the center line, the trial court erroneously submitted the question of comparative negligence to the jury.

We find that the defendants' contentions as to Janis are unsupported by the record and that comparative negligence was properly submitted as an issue.

The plaintiff Diana Balfour testified that before the accident she had been driving her Toyota Celica eastbound on Army Trail Road. There was heavy snow and because of the snow no center line was visible near the accident scene; however she could see the shoulder of the road. Plaintiff followed the other vehicular tracks, driving about 30 to 35 miles per hour. There was no eastbound traffic ahead.

Balfour first saw the tank truck when it was about a block away. When she first observed the truck it appeared that it was picking up speed and was moving between 40 and 45 miles per hour. At that time the truck was in its own (westbound) lane but it was crowding the eastbound land. As the truck approached, according to plaintiff, it

suddenly crossed from the westbound lane over into her lane of traffic driving "very, very fast." According to plaintiff the collision occurred before she could take any evasive action. She was still following the other car tracks at the time of the accident. The front end of the truck came into contact with the side of her car.

Arnold Wille, the driver of the gasoline tanker truck, testified that the road, approaching the accident scene, was only partially covered with less than an inch of snow. The center line was visible as was the edge of the pavement. According to Wille, when he first saw plaintiff's car it was completely in his lane about 100 to 150 feet away and traveling at about 35 miles per hour. It looked as if she was passing another car. He swung off onto the shoulder and applied his brakes. He admitted that driving a tractor-trailer combination off the pavement under those conditions carried with it the danger of loss of control and jackknifing, resulting in the vehicle "fishtailing" in an uncontrolled manner. According to Wille the collision occurred when the tractor-trailer combination was partly on the westbound shoulder and partially on the westbound lane of the roadway. However, it ended up in a field north of the eastbound lane of traffic. So did plaintiff's car.

There were also two drivers who had been following behind Wille's truck at the time of the accident. Ronald Janis testified that for about five miles before the accident, his blue pickup truck had been following behind the gas tanker trailer which was involved in the accident, traveling at about 35 miles per hour. He had been driving about three car lengths behind the truck using the truck as a guide because none of the lane lines were visible. As far as Janis remembered there was no vehicle between him and the truck.

Janis saw the truck veer sharply off the shoulder of the road in his lane and then whip back onto the road in the oncoming lane. Janis then slowed down. He saw the back of the truck go into the oncoming lane and then saw a big clump of snow pushed by truck tires into the eastbound lane; the truck by then had proceeded on its course. After seeing the clump of snow, Janis looked around and saw a black object off the road about one hundred feet west of the clump of snow. The black object turned out to be plaintiff's car. Janis pulled off the road and walked to plaintiff who was about 100 feet southeast from the automobile. He attended to her and started walking west to summon help. As he approached the truck which was also off the road on the south side, someone whom he could not identify yelled that there was gasoline leaking and to get away. Janis did not see the truck driver.

Janis agreed that he did not see the actual collision. As he was driving he could not see any vehicle approaching the tractor trailer.

Robert Barth testified that he had been driving about 175 to 200 feet behind the accident truck; a blue car was in between. All three vehicles were traveling about 35 miles per hour. According to him the weather was cloudy at that time with only light snow. The center line was visible at times. He did not remember if it was visible at the scene of the accident. The edge of the road was visible.

Barth first saw plaintiff's car when he was about 200 feet from the tanker. At this time he saw the truck apparently go out of control pulling off the road onto the westbound shoulder and kicking up a cloud of snow. The trailer straddled the pavement and the shoulder. The car was at this point traveling somewhat broadside, somewhat at an angle. The tanker driver stayed off to the right side of the road.

After the impact, which Barth did not see, the car tumbled end over end and flew into the ditch on the south side of the road. The truck jackknifed to the south and went into a field alongside the eastbound lane of traffic.

Barth ran to the truck to help the driver. He helped the driver out of the truck. When some unidentified persons, whom he believed to be construction workers, approached, he warned them off and advised them to help the driver of the car.

Barth denied he had any conversation with the driver of the blue car which had been driving between his car and the truck. That car, he said, did not stay at the scene.

Sergeant Hill, the investigating officer, testified that there had been one to two inches of drifting and blowing snow on the road. Conditions were icy and it was very hazardous. The center lane was not visible but the drop-off between the pavement and the shoulder was.

## I

■ It is clear from the foregoing recital of the evidence that defendant's contentions as to Janis' testimony are in fact without merit. Janis did witness the accident, although like Barth he did not see the actual impact; he did identify the truck he saw as the one identified in the accident; the conduct he witnessed was at the time of the accident, and there was no evidence that the truck driver had been removed from the accident scene before Janis arrived. Accordingly, *Schneider v. Wedding* (1965), 66 Ill. App. 2d 7, 213 N.E.2d 624, *appeal denied* (1966), 33 Ill. 2d 627, *Flesberg v. Prince Warehouse Co.* (1962), 37 Ill. App. 2d 22, 184 N.E.2d 813, and *Hanck v. Ruan Transport Corp.* (1954), 3 Ill. App. 2d 372, 122 N.E.2d 445, *appeal denied* (1955), 4 Ill. 2d 627, all relied upon by defendants, are not in point. In

*Schneider* the testimony was rejected because the witness could not, unlike the present case, identify the vehicle as the one involved in the accident. In *Flesberg* and *Hanck* the conduct testified to occurred sometime prior to and some distance from the accident scene; whereas here the conduct occurred at the time of the accident. Furthermore *Flesberg* and *Hanck* were disapproved of in *Schneider,* which held they unduly restricted the admissibility of that type of evidence.

The fact that Janis did not witness the actual impact does not disqualify him from being an eyewitness. (*Klavine v. Hair* (1975), 29 Ill. App. 3d 483, 331 N.E.2d 355, *appeal denied* (1975), 61 Ill. 2d 598; *Haley v. Baltimore & Ohio R.R. Co.* (7th Cir. 1965), 341 F.2d 732, *cert. denied* (1965), 382 U.S. 861, 15 L. Ed. 2d 99, 86 S. Ct. 121; and compare *People v. Stephens* (1973), 13 Ill. App. 3d 642, 301 N.E.2d 89.) It is not necessary that an eyewitness see everything that occurred at the accident scene. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12.) Here, as in *Plank,* while the witness did not see all of the vehicles involved before the accident, he could determine the location of the truck in relation to the center line. Thus the evidence was both relevant and material. *Plank.*

## II

Defendants contend that since the issue in this case was which party crossed the center line, the trial court committed reversible error in instructing the jury on comparative negligence. Defendants' argument is apparently based on the belief that when two vehicles hit head on, the one in the wrong lane is always 100% negligent and the one in the proper lane can never be negligent. This is not the law. The fact that one party's vehicle crossed into the other party's lane where the collision occurred does not establish negligence as matter of law, if there is evidence explaining the circumstances from which reasonable inferences favorable to the former party could be drawn. (*Imparato v. Rooney* (1981), 95 Ill. App. 3d 11, 419 N.E.2d 620; *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 371 N.E.2d 692, *appeal denied* (1978), 71 Ill. 2d 603.) More importantly, the duty to exercise ordinary care to avoid a collision is reciprocal, and both parties have a duty to use every precaution to avoid a collision. (*Waldron v. Hardwick* (1968), 99 Ill. App. 2d 36, 240 N.E.2d 772, *appeal denied* (1969), 40 Ill. 2d 578.) Thus, "[i]t is not true, as appellant seems to contend, that if she was driving on the right side of the road at the time of the accident, she owed no further duty to the plaintiff. One must still exercise due care to prevent injury to oneself and others

and to avoid a collision with a driver who may be proceeding on the wrong side of the road." (*Walling v. Lingelbach* (1975), 33 Ill. App. 3d 949, 952, 338 N.E.2d 917, 920; *aff'd* (1976), 65 Ill. 2d 244, 357 N.E.2d 530; in accord, *Hicks v. Swift & Co.* (1936), 285 Ill. App. 1, 1 N.E.2d 918.) Accordingly, courts have repeatedly upheld judgments apportioning negligence even though one driver was wholly or partially in the wrong lane. See, for example, *Goerlich v. Ippolito* (1978), 62 App. Div. 2d 1030, 403 N.Y.S.2d 922; *United States v. Tirado* (1st Cir. 1966), 358 F.2d 939; *Pagel v. Holewinski* (1960), 11 Wis. 2d 634, 106 N.W.2d 425; *White v. New Hampshire Insurance Co.* (1980), 227 Kan. 293, 607 P.2d 43.

■ Defendants' reliance on *Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 357 N.E.2d 530, is unwarranted. In that case the passenger in one car sued both her driver and the driver of the other car which undisputedly had been in the wrong lane at the time of the accident. The jury found against both drivers. However, the appellate court, while holding, as quoted earlier, that the passenger's driver still had had a duty to exercise due care, found that any possible negligence such as speed, and possible momentary lapse in attention, and failure to sound a horn did not as a matter of law, under the evidence in the record, contribute to cause the accident. The supreme court affirmed, holding that the accident was caused by the one driver's having been in the wrong lane and that none of the other driver's acts was a proximate cause of the injury. We cannot say the same in the present case. Regardless of which party the jury concluded had crossed the center line (and indeed the jury could have concluded that either or both did), the jury could also have found one or both of the parties negligent in driving too fast for the conditions of the road and in failing to take proper evasive measures. Accordingly this issue was properly submitted to the jury.

Judgment affirmed.

JOHNSON and LINN, JJ., concur.