RICHARD G. RUTTER *et al.*, Plaintiffs-Appellants, v. CARLYLE L. GEMMER *et al.*, Defendants-Appellees.

Second District   No. 86—0374

Opinion filed March 18, 1987.

Raphael E. Yalden II and Joseph D. Olsen, both of DeBruyne, Yalden & Olsen, of Rockford, for appellants.

H. Anne McKee, D. Kendall Griffith, and Adam S. Kreuzer, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, Richard and Carol Rutter, appeal from an order of the trial court granting defendant, James E. Curry's motion for summary judgment.

Plaintiffs brought suit against defendants, Curry and Gemmer, seeking damages for personal injuries and loss of consortium due to an automobile accident involving plaintiff, Richard Rutter, Curry, and Gemmer. Plaintiffs entered into a settlement agreement with Gemmer, who was then dismissed from the suit.

The complaint alleged that Richard Rutter was westbound on East Main street (also known as Route 64) at its intersection with 38th Street in St. Charles, Illinois. Rutter was stopped at the intersection to make a left-hand turn. Gemmer, who was also proceeding westbound on East Main Street, struck the back end of Rutter's automobile, forcing it into the eastbound lanes of traffic, where it was struck by an automobile driven by Curry. The complaint alleged that Curry was negligent in failing to decrease his speed so as to avoid the collision, in violation of section 11—601 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601), in failing to keep his automobile under proper control, in failing to keep a proper lookout, and that Curry's negligence was a proximate cause of the second collision and Rutter's injuries.

Curry filed a motion for summary judgment. In the motion, Curry relied on certain excerpts from the depositions of Rutter and Curry and various witnesses. Curry relied on the following from Rutter's deposition:

"Q. Can you tell me at all as you sit here today, sir, what, if any movement that second vehicle made before the impact occurred with your vehicle?

A. No, sir, I can't tell you ... ***

Q. Do you have any opinion as to the speed of the second vehicle at the time the impact occurred?

A. Only that there were—it's 55 miles an hour there and it was in the lane of traffic so I would imagine it was between 45 and 55. I really don't know.

Q. You don't recall observing anything sporadic about the driving of the second vehicle that you hit then, I take it?

A. No, sir, I don't."

Curry relied on the following from witness Gregory J. Hurdle's

deposition:

"Q. Did the brown Ford (Rutter's automobile) go at an angle into the eastbound lanes?

A. Yes.
***

Q. Could you tell us the speed of the white stationwagon [Curry's automobile] when you first saw it?

A. Those eastbound lanes seemed like they might have been going a little slower, maybe 45, because it seemed to be heavier on that side.

Q. But the white stationwagon in particular, could you form an estimate as to its speed when you first saw it in the eastbound lanes?

A. I'd say 45.

Q. Now, was there a collision between the white stationwagon and the Ford?

A. Yes, the Ford hit the wagon. ***

Q. Can you describe the sound that you heard?

A. Just screeching and metal—screeching tires and metal contact.

Q. Could you determine whether or not the white stationwagon applied its brakes prior to the second collision?

A. No, I can't determine if it did or not. He didn't know what hit him. I know that.

Q. Meaning the white stationwagon?

A. Right. ***

Q. I want to refresh your recollection. I'm going to say the word 'impact'. and look at my watch. I want you to tell me exactly when it was after the first impact that you heard or saw the second impact. Okay?

A. Okay.

Q. Okay. Impact.

A. Now.

Q. That was two seconds.

A. Yes."

Curry relied on the following from witness Barbra Ann Wilson's deposition:

"Q. But when you first saw the white Mazada [sic] stationwagon. after the collision between the Ford and the Plymouth (Gemmer's automobile); is that correct?

A. Oh, yes, yes.
***

Q. Could you determine the speed of that white station-wagon when you first saw it?

A. No.

* * *

Q. Based upon what you saw, did the Mazada [sic] have any time to avoid the accident, to avoid going into a skid, to avoid the Ford?

A. My—like I said awhile ago, I—it happened so quickly and that car was pushed in front of him so suddenly that I thought he would definitely hit him, but he obviously did not; but I did hear him start to slide or put on his brakes, so he obviously reacted immediately, and there must have been a slight distance there that allowed him when he started to slide to go around the car. * * *

Q. Based upon what you observed, there wasn't anything that the Mazada [sic] could have done differently, based on what you saw?

A. That's right."

Curry relied on the following from his own deposition:

"Q. Did you see that brown Ford involved in the collision with another vehicle in the westbound lanes of Route 64?

A. Yes.

* * *

Q. What was the distance between yourself and the brown Ford when you first saw it?

A. Between 500 and 1000 feet. * * *

Q. Now, did you see a blue Plymouth behind the brown Ford?

A. No, I did not.

* * *

Q. When the collision took place, what was the distance between the brown Ford and your vehicle in the inside lane of the eastbound traffic?

A. Between 50 and 100 feet at the most.

Q. What was your speed at that time?

A. About 45 miles per hour.

* * *

Q. I understand the brown Ford comes into the inside lane at an angle of approximately 45 degrees. What do you do at that point?

A. At that point, when the brown Ford came into my lane, there was only one of two things to do: hit it head on or try to

avert it as much as possible. To avoid a collision was almost impossible. It was impossible. I either hit it head on or I tried to miss it as much as possible.

\* \* \*

Q. My question is: What did you do then?

A. I turned to the right to avoid a head-on collision.

\* \* \*

Q. Is there any reason why you turned your wheels to the outside rather than to the inside?

A. Because I did not want to go head on into ongoing traffic. I wished to avoid going into a head-on-type of collision situation. I wanted to stay away from all traffic."

In their response to Curry's motion, plaintiffs stated that Curry had told Hurdle that he (Curry) did not know what had happened. Plaintiffs also objected to certain of the excerpted statements on the basis that they contained conclusions of law, namely, Hurdle's statement that the "white stationwagon" didn't know what had hit him and Wilson's statement that there was not anything Curry could have done differently. The trial court granted Curry's motion for summary judgment, and plaintiffs appealed.

The sole issue on appeal is whether the trial court erred in granting Curry's motion for summary judgment.

Section 2–1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2–1005(b), (c)) provides in pertinent part as follows:

"For defendant. A defendant may, at any time, move with or without supporting affidavits for a summary judgment in his or her favor as to all or any part of the relief sought against him or her.

(c) Procedure. The opposite party may prior to or at the time of the hearing on the motion file counteraffidavits. The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Plaintiffs contend that it was improper for the trial court to grant summary judgment based upon the arguments set forth below.

■■ Plaintiffs argue, first, that Curry's motion improperly relied on conclusions of law contained in the depositions of witnesses Hurdle and Wilson. Hurdle testified that Curry did not know what hit him. Wilson testified that there was nothing Curry could have done differ-

ently. In determining the absence of existence of a genuine issue of fact, the trial court should only consider evidentiary facts and not mere conclusions of law. (*Bielarczyk v. Happy Press Lounge, Inc.* (1980), 91 Ill. App. 3d 577, 581.) Similar statements have been held to be strictly conclusions and not statements of facts. See *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35; *Santschi v. Gorter* (1978), 63 Ill. App. 3d 394.

Next, plaintiffs argue that the trial court's granting of the motion for summary judgment was improper because the facts contained in the depositions relied upon by Curry are capable of admitting more than one conclusion. In *Santschi v. Gorter*, the Santschi automobile was proceeding southbound on Green Bay Road. An automobile driven by Gorter exited a private drive and pulled out, blocking the southbound lane. In order to avoid the Gorter automobile, Santschi turned to her left and entered the northbound lanes, colliding with an automobile driven by Zannini. In his motion for summary judgment, Zannini stated that the lane changing by Santschi was without warning and was totally unanticipated, and that under the circumstances, the collision could not have been prevented. Responding to Zannini's motion, Santschi stated that at his deposition Zannini had testified that he did not see the Gorter automobile prior to the collision. The trial court granted the motion for summary judgment, and Santschi appealed. In reversing the granting of summary judgment, this court stated as follows:

> "Neither plaintiff nor defendant has pinpointed the distance between their respective automobiles when each could observe the other, or the Gorter automobile. Defendant's statement in this regard that the collision was unavoidable is strictly a conclusion and not a statement of fact in this case. We are of the opinion that the facts, uncontroverted as they are, are capable of admitting more than one conclusion, namely that plaintiff's automobile moved so quickly into defendant's lane that defendant was unable to stop in time or that as a result of defendant's failure to maintain a proper lookout his automobile collided with that of plaintiff." 63 Ill. App. 3d 394, 396-97.

Plaintiffs argue that as in *Santschi*, the facts in the case before us are capable of more than one conclusion. They point out that a truck directly ahead of Curry was able to avoid a collision with Rutter's automobile by taking evasive action; that Curry stated after the accident that he did not know what happened, thus admitting that he was not keeping a proper lookout; that the varying testimony regarding the number of seconds elapsing between the first and second collisions

showed there was sufficient time to take evasive action to avoid the second collision; and that while Curry testified that he was traveling less than 50 miles per hour, the impact of the collision broke both axles on his automobile and caused his automobile to travel broadside, striking the southeast curb of 38th Street and Route 64 and traveling approximately 125 feet from the point of impact.

Curry argues that he acted reasonably under the circumstances. Curry had first observed plaintiff's automobile in the opposite lanes of traffic when Curry was 500 to 1,000 feet away. He also observed the first collision between the Gemmer and Rutter automobiles. At the time of the first collision, Curry was only 50 to 100 feet away from Rutter's car.

Curry also points out that the physical evidence showed that Rutter's automobile struck behind the rear tire of Curry's automobile. Curry contends that only two inferences are possible from the physical evidence: that Curry did not swerve and yet the cars were so close when Rutter's car was struck and pushed into Curry's lane, Curry's automobile almost cleared the path of Rutter's automobile without impact; or that defendant did swerve and avoided the impact to the front of his car and three-fourths of the left side of his car. Curry further contends that he could not have avoided the second collision given the distance between the two automobiles when the first collision occurred.

■ The moving party must show that his right to summary judgment is free from doubt. (*Elliot v. Chicago Title Insurance Co.* (1984), 123 Ill. App. 3d 226, 231.) Inferences drawn from the evidence are to be resolved in the favor of the nonmovant. (*Rubin v. City National Bank & Trust Co.* (1980), 81 Ill. App. 3d 1020, 1022.) Inferences may be drawn from facts which are not in dispute, and if fair-minded persons could draw different inferences from those facts, then there is a triable issue of fact. *Ruby v. Wayman* (1968), 99 Ill. App. 2d 146, 150.

As to the speed of Curry's vehicle, Rutter, Hurdle, and Curry all estimated it to be between 45 and 55 miles per hour, although Rutter stated he really did not know what the speed was. Plaintiffs argue that the jury would not be required to give credence to Curry's testimony regarding his own speed, citing *People v. Daley* (1977), 48 Ill. App. 3d 289, 292. However, what the court in *Daley* actually said was that a defendant's testimony as to speed would not be a defense to *proof* of speeding. Furthermore, Curry's testimony as to speed was supported by Hurdle's testimony and, to a certain extent, Rutter's testimony.

There was no evidence contradicting Curry's testimony as to the

distances between Rutter's automobile and Curry's automobile at the time of the first collision. Further, unlike *Santschi v. Gorter* (1978), 63 Ill. App. 3d 394, here Curry was able to testify as to the distances between his automobile and Rutter's both when he first observed Rutter's automobile and at the time of the first collision.

Plaintiffs argue that the jury has the right to consider the force and violence with which an automobile comes into contact with physical objects after an accident and the damage to the vehicle itself in determining its speed, citing *Brown v. Motor Cargo, Inc.* (1956), 12 Ill. App. 2d 476 (abstract). The fact that traffic was heavy, the distance traveled by and the damage to Curry's vehicle do not in and of themselves support a reasonable inference that Curry's automobile was traveling at an unreasonable speed.

Moreover, we agree with Curry that neither his failure to keep a proper lookout, the alleged excessive speed, nor any of the other alleged acts or omissions on his part was a proximate cause of the second collision or Rutter's injuries.

█ Liability cannot be based upon surmise or conjecture as to the cause of the injury. (*Vance v. Lucky Stores, Inc.* (1985), 134 Ill. App. 3d 166.) Rather, proximate cause can only be established when there is reasonable certainty that the defendant's acts caused the injury. (*Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817.) Where plaintiff fails to establish the necessary element of proximate cause, he has not sustained his burden of making a *prima facie* case of negligence and summary judgment is proper. *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35, 39; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817.

In *Young v. Texas Eastern Transmission Corp.*, the court affirmed the granting of defendant's motion for summary judgment. The facts of that case are somewhat similar to those in the case before us. Plaintiff's decedent was operating a truck which incurred a blowout, forcing the truck into the path of another truck operated by the defendant. In light of the uncontradicted statement of the Illinois State trooper who witnessed the collision that the decedent's truck had suffered a blowout, the court concluded that neither the failure to keep a proper lookout nor any of the defendant's other acts or omissions was the proximate cause of the collision or the decedent's death. Since no collision would have occurred but for decedent's crossing the center line, no issue of fact existed as to whether any act or omission on defendant's part was the proximate cause of the collision or the decedent's death. Therefore, summary judgment was proper.

██ █ However, we do not mean to suggest defendant had no

duty of due care to avoid automobiles on the wrong side of the road. One must still exercise due care to prevent injury to oneself and others and to avoid a collision with a driver who may be proceeding on the wrong side of the road. (*Balfour v. Citgo Petroleum Corp.* (1983), 116 Ill. App. 3d 140, 144-45; *Walling v. Lingelbach* (1975), 33 Ill. App. 3d 949, 952, *aff'd* (1976), 65 Ill. 2d 244.) In *Walling*, two cars collided in the fog. Walling, who was a passenger in the car driven by Strahorn, sued both Strahorn and the driver of the other car. There was no evidence that Strahorn's car crossed the center line; however, there was evidence that the other car did cross the line. A jury found both drivers guilty of negligence. Strahorn appealed, and the appellate court reversed, finding that the evidence was insufficient to sustain a verdict for Walling against Strahorn. Our supreme court affirmed, stating:

> "Although Walling argued that it could be inferred that Strahorn was negligent by exercising improper control and lookout and by speeding, none of these alleged acts were the proximate cause of appellant's injury. We feel that the jury abandoned the domain of allowable inferences and entered the area of speculation in determining that Strahorn's negligence was one of the proximate causes of Walling's injury." (*Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 248.)

While we agree that the rule quoted above is an accurate statement of the law, the crucial issue on appeal is whether any act or omission on Curry's part could be considered the proximate cause of the second collision and Rutter's injuries. *Young v. Texas Eastern Transmission Corp.* (1985), 137 Ill. App. 3d 35, 40.

From our review of the record and the authorities cited to us, we find no triable issue of fact regarding whether Curry was guilty of actionable negligence with respect to Rutter. Therefore, the trial court did not err in granting Curry's motion for summary judgment.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

LINDBERG, P.J., and INGLIS, J., concur.