LAWRENCE K. ECKEL, Plaintiff-Appellant, v. MARY BETH O'KEEFE, Defendant-Appellee.

First District (2nd Division)   No. 1—92—1339

Opinion filed September 28, 1993.

McCORMICK, P.J., dissenting.

Paul W. Grauer & Associates, of Schaumburg (Paul W. Grauer and William S. Robinson, of counsel), for appellant.

James M. Hoffman & Associates, of Schaumburg (James C. Keane, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Lawrence Eckel filed suit against defendant Mary Beth O'Keefe alleging that he suffered both personal injury and property damage as a result of her negligent operation of a motor vehicle. Approximately two weeks before trial, defendant obtained leave to amend her answer, thereby interposing the affirmative defense that the plaintiff's own negligence proximately caused his injuries. A jury found for plaintiff, but found him 40% comparatively negligent, resulting in a net recovery to him of $3,200. On appeal, plaintiff alleges two errors. First, he maintains that because the jury did not complete the tendered verdict form by assigning specific amounts as to the itemized damages, its verdict is infirm and should be reversed and the cause remanded for a new trial on damages. He also seeks reversal of the court's denial of his motion to direct a verdict against defendant on the issue of his comparative fault.

At trial, defendant, called as an adverse witness by plaintiff, testified that on May 17, 1989, at about 8:45 p.m., she was driving her auto northbound on Barrington Road in northwestern Cook County, Illinois. In that area, Barrington Road is a two-lane highway divided only by a double yellow line. At the time of the accident, traffic on the road was heavy, and at no point did defendant's speed exceed the maximum posted limit of 50 miles per hour. She further testified that when her vehicle came into contact with the plaintiff's, it was very dark, the weather clear and the road dry.

As defendant approached the intersection of Barrington Road and Covered Bridge Road, her vehicle veered off the pavement and onto the soft shoulder on her side of the highway. She approximated her

speed at that point to be 35 miles per hour. When she attempted to correct the direction of her vehicle and get it back on the pavement, the rear-end of the auto "fishtailed" and it crossed the median into the southbound (or plaintiff's) lane. While the car fishtailed, defendant took her foot off the accelerator and steered straight, presumably trying to regain control. She then impacted with plaintiff's automobile in a drainage ditch adjacent to his side of the road. She characterized the impact as heavy.

Plaintiff testified that on the date and at the time in question, he was driving his 1982 Jeep Cherokee south on Barrington Road. He corroborated defendant's earlier description of the road and weather conditions that night, but added that although he had driven down that stretch of Barrington Road many times in the past, he did not recall seeing any potholes in the general vicinity of Barrington Road and Covered Bridge Road.

As he neared Covered Bridge Road, he saw the twin headlights of an oncoming vehicle as only approximately one half of that car drove on the pavement in the northbound lane. Fearful, he took his foot off the accelerator and observed the oncoming driver struggle to wrest the auto back on the pavement. He saw that once the driver of the other vehicle returned the auto to the road, it was headed across the median, straight at his vehicle. He responded by steering his auto onto the gravel shoulder of the southbound lane. When asked why he headed for the soft shoulder rather than the northbound lane to avoid the accident, he pointed to his instinctive fear of oncoming traffic. The driver's side of plaintiff's vehicle struck the passenger side of defendant's when both autos were perpendicular to the roadway and heading down the incline of a drainage ditch which runs adjacent to the lane in Barrington Road in which plaintiff was driving. Upon impact, plaintiff's shoulder made violent contact with the doorpost of his auto.

Defendant took the stand once again, this time on her own behalf, and besides reiterating many of the things she had testified to earlier as an adverse witness, she added that while driving, she felt her right front tire descend, later surmising that since the accident occurred in the spring, it hit a deep pothole. This forced her auto off the pavement and onto the soft gravel-strewn shoulder. As soon as she felt the car veer off the road, she took her foot off the gas pedal, steered toward the road, and at no point did she touch her brake pedal. When asked why she did not brake, she stated that that was something her instructors in driver's education told her never to do. She also added that while she struggled to regain control of the vehicle and before

coming into contact with plaintiff's auto, she recalled seeing through her rearview mirror two other cars pass by her without making contact with her.

After the parties rested but before closing argument, plaintiff moved for a directed verdict against defendant on the issue of liability and also on defendant's affirmative defense, and defendant cross-moved for a directed verdict on the issue of liability. The court denied both parties' motions, finding that enough evidence was presented to preclude finding defendant solely liable as a matter of law. The court then held a conference on jury instructions wherein plaintiff tendered and the court accepted verdict form B, which provides blank spaces for the jury to fill in as to the extent of damages necessary to compensate plaintiff for: (1) disability from injury; (2) past and future pain and suffering; (3) reasonable medical expenses incurred and to be incurred in the future; and (4) value of lost earnings.

The court gave the jury its charge and tendered to it *inter alia*, verdict form B. After an hour of deliberation, the jury found the defendant negligent, but allocated 40% of the fault to plaintiff. After discounting for plaintiff's comparative fault, it found damages in his favor in the amount of $3,200. However, the jury did not indicate what the specific source of the damages were; instead, it left empty the blanks on the form where it was instructed to ascribe some dollar amount necessary to compensate plaintiff for each specific injury.

The trial court entered judgment on the verdict in the amount of $3,200 plus costs. Defendant filed a verified motion for a setoff of $500 which plaintiff received from defendant's insurance provider and which was intended to cover part of plaintiff's lost wages. The court granted this motion, thus lowering the amount of judgment to $2,700 plus costs.

Plaintiff filed a post-trial motion citing as error the jury's rendering of a general verdict, thereby ignoring the dictates of section 2—1109 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1109), and also the court's denial of plaintiff's motion for a directed verdict on the issue of comparative fault. After accepting memoranda on the issues and hearing argument, the trial court denied plaintiff's motion on both grounds. Plaintiff filed a timely notice of appeal.

I

The first issue raised on appeal is whether the trial court erred in entering judgment on a verdict which does not comply with the requi-

site statutory form. Section 2—1109 of the Code of Civil Procedure provides in pertinent part:

"In every case where damages for injury to the person are assessed by the jury the verdict shall be itemized so as to reflect the monetary distribution among economic loss and noneconomic loss, if any ***." (Ill. Rev. Stat. 1991, ch. 110, par. 2—1109.)

Here, plaintiff tendered verdict form B, which included a space to itemize damages for disability, pain and suffering, past and future medical expenses and lost wages. The court properly instructed the jury that if it found for plaintiff, it was not merely to state the extent of his award, but was to assign discrete values to compensate plaintiff for the specified four injuries indicated on the verdict form. Although properly admonished, the jury did not comply with the court's instructions and, in violation of section 2—1109, returned what amounts to a general verdict.

Plaintiff contends on appeal that the jury's violation of the statute necessitates a reversal of the court's subsequent entry of judgment on that faulty verdict. Defendant replies that because plaintiff did not call to the court's attention the jury's failure to complete the form before it dismissed the jury, his raising of the issue for the first time in a post-trial motion for a new trial is inadequate to preserve it for review. She logically suggests that had the court been advised of the omission, it could have ordered the jury to properly fill out the form, thus rendering this appeal unnecessary. Plaintiff argues that he did not waive the issue and that his tardiness in advising the court of the error was not due to misfeasance, but because he first learned of the incomplete verdict after the jury was dismissed. He claims that he did not actually see the verdict form until after the jury's dismissal, and even if he did, merely tendering the proper form combined with raising the error in a post-trial motion is sufficient to preserve it for review. He clings to his position that raising the issue for the first time in his post-trial motion was as timely as possible.

It is a basic proposition of Illinois law that where a party does not make a timely objection to error, he waives that issue for the purposes of appeal. (*E & E Hauling, Inc. v. Pollution Control Board* (1985), 107 Ill. 2d 33, 481 N.E.2d 664; *Chicago Housing Authority v. Rose* (1990), 203 Ill. App. 3d 208, 560 N.E.2d 1131; *Richter v. Northwestern Memorial Hospital* (1988), 177 Ill. App. 3d 247, 532 N.E.2d 269.) What constitutes "timely" in the instant case is the issue in dispute. Defendant maintains that timeliness here would be an objection raised before the jury was dismissed. She alleges that plaintiff had

multiple opportunities to discover that the form of the verdict was in error, and therefore, his failure to avail himself of one of them should be deemed a waiver on his part.

For instance, the verdict form was read aloud in open court and presumably plaintiff did not object when the court announced only a net amount rather than detailing the amounts recovered for the discrete categories of injury as outlined on the form. Moreover, at the request of plaintiff, the court polled the jury and plaintiff raised no issue as a result. Finally, defendant baldly asserts that plaintiff reviewed the verdict form before the jury was dismissed, thus squarely contradicting plaintiff's recitation of the facts. Clearly if this is true, plaintiff's failure to object after actually seeing the incomplete form would constitute waiver of the issue; otherwise, we would be allowing him to benefit from his own procrastination. This would be especially egregious where, as here, plaintiff could have cured his grievance by the simple expedient of pointing out the error to the court.

■■ Our supreme court has held that the appellant has the duty to present a sufficiently complete record which supports the basis of his appeal. (*Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 459 N.E.2d 958; *People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944.) Any doubts which arise from the incompleteness of the record must be resolved against the party who was derelict in his duty to ensure its completeness. (*Block & Co. v. Storm Printing Co.* (1976), 40 Ill. App. 3d 92, 351 N.E.2d 271.) Here, the factual issue of when plaintiff first learned that the jury returned a general verdict is in dispute, and it is not resolved by the record. Plaintiff now claims that his supplementation of the record with the transcript of the hearing on the post-trial motion manifests his version of what took place before the jury was dismissed. However, since the transcript of the post-trial motion reflects only the recollection of plaintiff's counsel on what happened, it sheds no light on what actually transpired during the pivotal period from the point when the jury returned its verdict until the time it was dismissed. Consequently, under *Foutch*, we must presume that if the record were complete, it would support defendant's rendition of the facts. Applying that assumption here, plaintiff knew that the verdict form was incomplete before the jury was dismissed. His failure to apprise the court of the error at a time when it could be easily rectified by having the jury complete the form constitutes waiver. Therefore, given plaintiff's waiver of the issue, we find that the trial court did not err by denying his motion for a new trial based on the jury's non-compliance with section 2—1109.

## II

■ Plaintiff next argues that the trial court erred by not directing a verdict in his favor on the issue of his comparative fault. He maintains, relying on *Kyrouac v. Brockman* (1983), 120 Ill. App. 3d 249, 457 N.E.2d 1074, that where the plaintiff affirmatively establishes that defendant crossed the center line of a two-lane highway and struck plaintiff in his own lane, the burden shifts to defendant to refute the legal conclusion that the accident was proximately caused by her own negligence alone. He contends that the evidence offered by defendant falls well short of overcoming this burden, and as a consequence, the jury's allocation of 40% of fault for the accident to him is against the manifest weight of the evidence and must be reversed. We agree and therefore must reverse the trial court's decision to leave the question of plaintiff's comparative fault to the jury.

In *Williams v. Elkin* (1992), 239 Ill. App. 3d 1094, we recently had occasion to revisit this area of the law, and we held there that an "incursion of but a very few seconds into a driver's right-of-way by another vehicle approaching from an opposite lane does not warrant the conclusion that the offended driver must have been guilty of negligence for the accident to have happened. Nor, as a matter of law, can the offended driver be held guilty of contributory negligence." *Williams*, 239 Ill. App. 3d at 1099, citing *Lesperance v. Wolff* (1979), 79 Ill. App. 3d 136, 141, 398 N.E.2d 360, 364; see also *Wilmere v. Stibolt* (1987), 152 Ill. App. 3d 642, 647, 504 N.E.2d 916, 919.

The applicability of our holding in *Williams* to the facts in the case *sub judice* is inescapable. Here, defendant veered into plaintiff's lane and right-of-way. In his attempt to avoid a collision, he reacted in the eminently reasonable manner of steering his vehicle away from defendant's auto and onto the shoulder of his side of the road where he believed that both he and the person or persons in the car coming toward him would be out of harm's way. It must be emphasized that the subsequent collision between the two occurred in the drainage ditch adjacent to plaintiff's lane of traffic.

Defendant, in an allegation raised only two weeks before trial, claims that this conduct was negligent and that it proximately caused the resulting collision. She contends that instead of responding as he did, plaintiff should have continued in a straight path as the two more proximate drivers who avoided an accident did. How-

ever, while it may be true that this might have been the safest route plaintiff could have taken,

> " '[t]he general principle is that " 'a party having given another reasonable cause for alarm cannot complain that the person so warned has not exercised cool presence of mind, and thereby find protection from damages resulting from the alarm.' " [Citations.] Courts, therefore, do not view a party's acts with hindsight, but under all circumstances by the standard of what a prudent person would have been likely to do under the same circumstances. *Lesperance v. Wolff* (1979), 79 Ill. App. 3d at 141, 398 N.E.2d at 364 ***.' " *Williams*, 239 Ill. App. 3d at 1097-98, quoting *Wilmere v. Stibolt* (1987), 152 Ill. App. 3d 642, 647.

When viewing plaintiff's actions here with the relaxed eye of hindsight, one might postulate, as defendant and the dissent do, that plaintiff should have taken another course. The facts gleaned from the record may suggest that he could have best avoided the accident by proceeding in a straight path, rather than swerving toward the shoulder adjacent to his lane of traffic. But such determinations are not ordinarily made under the sudden and intense glare of on-coming headlights in one's own lane or while experiencing the acute rush of adrenaline that is surely bound to accompany his seeing another vehicle hurtling toward himself and his family; moreover, the law does not impose upon plaintiff the obligation to make what may later prove to be the best decision, but only the one which the reasonably prudent person would adopt if placed in a similar position. Therefore, we cannot agree with defendant that plaintiff was at fault because he did not choose the best possible route to take as her car bore down on him. Under a long-existing principle of Illinois law, he need not make the best choice among, or to play a form of Russian roulette with, the alternatives which presented themselves in that short span of time. The law requires only that he act as he did: in a reasonable manner. Indeed, to make *plaintiff* answerable in damages to *defendant* under the facts of this case evokes Dickens' famous remark: "If the law supposes that, *** the law is a ass, a idiot."

Defendant relies on *Balfour v. Citgo Petroleum Corp.* (1983), 116 Ill. App. 3d 140, 452 N.E.2d 46, to support her contention that the general rule typified by *Williams* and *Lesperance* is not inviolate, but is subject to exceptions. In *Balfour*, we held that "the duty to exercise ordinary care to avoid a collision is reciprocal, and both parties have a duty to use every precaution to avoid a colli-

sion." (*Balfour*, 116 Ill. App. 3d at 144, 452 N.E.2d at 48.) While we entertain no doubts concerning the truth of *Balfour*'s observation that the general rule is amenable to exceptions, we find that none applies to the instant case and that *Balfour* is inapposite.

The record in *Balfour* showed that it snowed heavily on the evening of the accident and that consequently the roadway was snow-packed and slippery. Furthermore, the plaintiff testified that the yellow line which divided the two lanes of traffic was so obscured that she did not know the true width of her lane, but merely estimated it based on the tracks of the vehicles which had preceded her. Those road and weather conditions supplied the plaintiff with notice that on that evening, while operating her vehicle, she was obligated to exercise extraordinary care. The question in *Balfour*, therefore, was whether her failure to employ this additional care and avoid the accident could be considered a proximate cause of her injury. The *Balfour* court held that since the resolution of whether she used the proper quantum of care was one for the jury, it was not error to instruct it on plaintiff's comparative fault, even though the facts showed that the defendant crossed the median and breached the plaintiff's right-of-way.

We interpret *Balfour* as holding that where a defendant invades a plaintiff's right-of-way, the plaintiff will not be absolved of comparative liability where something other than the invasion puts him on notice of the strong possibility that another may encroach upon his lane of traffic. Applying that interpretation to the facts at bar, clearly the *Balfour* exception is irrelevant, for here, on the evening of the accident, the weather was clear and the roadway was dry. Unlike *Balfour*, neither the conditions nor anything else exhorted plaintiff to keep a special watch for oncoming vehicles in the opposite lane that might invade his. Accordingly, as in *Williams* and its antecedents, the general rule controls, and plaintiff, by reacting as the reasonably prudent person would, was faultless as a matter of law. Therefore, the trial court erred by refusing to direct a verdict in plaintiff's favor on the issue of his comparative negligence.

To summarize, since we find that plaintiff waived the correctness of the verdict form returned by the jury, we affirm the court's entry of judgment on the jury's verdict. However, we reverse its denial of plaintiff's motion for a directed verdict on the issue of his comparative negligence and remand with instructions for the trial court to enter judgment against defendant in the full amount of damages found by the jury prior to its allocation of fault to plain-

tiff, or $5,333.33, less the $500 already received by plaintiff from defendant.

Affirmed in part; reversed in part and remanded with instructions.

HARTMAN, J., concurs.

PRESIDING JUSTICE McCORMICK, dissenting:

I concur in part I of the majority opinion. An appellant must preserve a record sufficient to show not only that there was error, but also that the appellant made timely objection to the error. (*Greenlee v. John G. Shedd Aquarium* (1961), 31 Ill. App. 2d 402, 411-12, 176 N.E.2d 684.) Plaintiff here has not preserved a sufficient record. I dissent from part II of the majority opinion.

"Whether conduct was negligent or contributorily negligent is rarely decided as a matter of law. The determination of what conduct is negligent or contributorily negligent is a composite of the experiences of average people, and is left to the jury for evaluation." (*Johnson v. Colley* (1986), 111 Ill. 2d 468, 475, 490 N.E.2d 685.) The jurors in this case heard all the evidence, weighed the credibility of the witnesses, and in light of their composite experiences, found that plaintiff acted negligently. The majority holds that the trial court erred by failing to direct a contrary verdict.

"[T]he circuit court may properly direct a verdict only when the evidence presents no factual question for the consideration of the jury." (*Rittenhouse v. Tabor Grain Co.* (1990), 203 Ill. App. 3d 639, 646, 561 N.E.2d 264.) The evidence here presents a factual question of whether plaintiff acted negligently. Viewing the evidence in the light most favorable to defendant, as we must on plaintiff's motion for directed verdict (*Johnson*, 111 Ill. 2d at 474), the record shows that defendant lost control of her car when it hit a pothole and the right tire went onto the east shoulder. Plaintiff saw, from more than 200 feet away, that defendant was losing control of her car, and he knew he needed to be ready to avoid a possible collision. When defendant tried to bring the right side of her car back onto the roadway, the car fishtailed, turning perpendicular to the road, and then went quickly straight across the road before defendant brought the car to a stop on the west shoulder with the back of her car protruding slightly into the roadway. Two cars went around the back of defendant's car before plaintiff rammed into the side of

defendant's stationary car. As the majority admits, the point of impact was off the roadway.

Since defendant testified that her car fishtailed to be perpendicular to the roadway while it was on the east shoulder, if the jurors believed her, they would have found that plaintiff never faced the "on-coming headlights in [his] own lane" which the majority posits. (See 254 Ill. App. 3d at 709.) Defendant's car never hurtled toward plaintiff; instead, it crossed the roadway ahead of him, with its side facing plaintiff. Plaintiff had several seconds to react, as he foresaw the possible problem from at least 200 feet away. A jury of 12 persons, probably familiar with driving, found that plaintiff's course of action, turning off the roadway and turning towards the same direction as defendant's car, thereby running directly into defendant's car, was not reasonable and plaintiff was guilty of contributory negligence. The majority dismisses the jury's assessment because the majority believes plaintiff's course of action was reasonable, although not the best available.

In *Chevrie v. Gruesen* (1991), 208 Ill. App. 3d 881, 567 N.E.2d 629, the plaintiff was driving east when a car struck the back of his car and sent the plaintiff's car across the center line, into oncoming traffic, moving on a perpendicular to the flow of traffic. Two cars passed without incident, but the third vehicle, which the defendant drove, ran into the side of the plaintiff's car in the defendant's lane. The trial court granted summary judgment for defendant and the appellate court reversed, holding:

> "The driver of a vehicle has the duty to maintain a proper lookout for other cars traveling on the road. [Citation.] This duty applies even though the other car is traveling on the wrong side of the road. [Citation.] So, too, a driver has the duty to reduce speed to avoid collisions." (*Chevrie*, 208 Ill. App. 3d at 884.)

The court rejected the defendant's argument that the collision was unavoidable:

> "Two drivers with less time and distance to either observe plaintiff's car or react to plaintiff's sudden appearance in their right-of-way were able to take effective evasive measures. \*\*\* [T]here is a clear factual question of whether defendant could have avoided the collision with plaintiff's car \*\*\*." *Chevrie*, 208 Ill. App. 3d at 886.

Applying similar reasoning, the trial court here rejected plaintiff's motion for directed verdict:

"The defendant testified without rebuttal that while her car was in the ditch she observed for certain one, and she thought perhaps even two, vehicles that passed behind her vehicle before her vehicle was struck by the plaintiff's car ***.

That evidence in and of itself, it seems to me, is sufficient to overcome a motion for a directed finding *** and make it a jury question."

I believe the trial court correctly applied the appropriate legal principles restated in *Johnson* and *Chevrie*. (See also *Pizano v. Trejo* (1971), 2 Ill. App. 3d 944, 947-48, 274 N.E.2d 861.) The issue of whether plaintiff met the standard of acting reasonably under the circumstances presented a question of fact for the jury to decide. For these reasons and the reasons stated in my dissent in *Williams*, the court should seize this opportunity to overrule *Williams*. I would affirm the judgment of the trial court.