(No. 48188.—)

HELEN W. WALLING, Appellant, v. KAREN LINGEL-
BACH *et al.*—(Lottie Strahorn, Appellee.)

*Opinion filed November 24, 1976.*

North, North & Ohlson and Charles H. Davis, both of
Rockford (Larry E. Ohlson, of counsel), for appellant.

Maynard, Brassfield & Cowan, of Rockford (Eugene
E. Brassfield, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Helen Walling, plaintiff, was seriously injured when the automobile in which she was riding collided head on with an approaching vehicle driven by Karen Lingelbach. At trial, the jury found both drivers guilty of negligence, and the circuit court of Winnebago County entered a judgment on the verdict against both defendant drivers in favor of plaintiff for $82,500.

Lottie Strahorn, the driver of the vehicle in which Walling was a passenger, appealed and the appellate court reversed without remandment, holding that the evidence was insufficient to sustain any verdict for Walling against Strahorn. (33 Ill. App. 3d 949.) Defendant Lingelbach, however, did not appeal. We granted Walling leave to appeal in which she contends that there was sufficient evidence to allow this case to go to the jury and to sustain a jury verdict under the rule stated in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill. 2d 494, 513. She also contends that the appellate court improperly substituted its opinion for that of the jury and trial judge on the credibility of witnesses, the conflicts in the evidence and the weight of evidence, and ignored the jury's findings of proximate cause.

The following facts were presented at trial: On November 14, 1973, at 6:20 a.m., Lottie Strahorn was driving her husband and Helen Walling to work. She was traveling northbound on Springfield Avenue, a paved two-lane highway, at approximately 30 to 35 miles per hour. At the same time, Lingelbach was alone in her vehicle, driving southbound on the same road. The day was hazy with intermittent patches of fog ranging from light to very heavy. Strahorn testified that the visibility averaged 25 feet except in areas of heavy fog, where visibility was greatly reduced. Lingelbach observed that the fog got heavier as she traveled further south. Both drivers claimed

to have had their headlights on. Lingelbach stated that she was in the right lane and was traveling 50 miles per hour when she entered an intersection 700 feet north of the collision. However, she did not know in which lane the collision occurred. She first saw the other vehicle when it was three or four feet in front of her, and she immediately swerved left just before impact.

Strahorn testified that Lingelbach's vehicle was in the southbound lane, but just prior to the collision entered her lane. At this time she exclaimed, "Look at that crazy fool, he must be drunk!" Then she applied her brakes, slowed down, and made a right turn onto the shoulder. Lingelbach's car was 10 feet away when last observed by Strahorn. Her exclamation was somewhat corroborated by Walling's testimony relating that Strahorn stated, "They are going to hit us!" However, Strahorn's husband, also a passenger, had no recollection that his wife made this statement.

The two officers that had responded to the call regarding the accident testified that visibility was very poor due to fog and that the pavement was damp. One of the officers, John Markley, observed that Lingelbach's vehicle was facing south on the east shoulder of Springfield Avenue and Strahorn's car was facing north but positioned southeast of the other automobile.

No skid marks were found on the road. Markley observed glass and debris from the crushed headlights, and turn signals were scattered in the northbound lane and formed a two-foot circle with a quarter section missing. The center of the circle was one or two feet west of the edge of the pavement, 727 feet south of the intersection, and 58 feet north of the right front tire of defendant's vehicle. The distance between the vehicles after the collision was measured at 264 feet, but Markley, believing the measurement to be a miscalculation, stated that the actual distance was closer to 150 feet. He further observed that no windshields were broken and no glass or debris

was found within the proximity of the vehicles or in the southbound lane. The only statement he recalled having been made by parties to the accident was Strahorn saying something to the effect that she looked up and saw the car coming at her. However, she did not remember making any statements to police. Also he noted that neither party knew what happened.

A co-worker of both Walling and Strahorn's husband testified that the former, while in the hospital, made the statement that the accident was not Strahorn's fault. This statement was also heard by Strahorn's niece, but Walling denied making this statement.

Strahorn's husband stated that he saw the other vehicle "one block away" just prior to the accident, that it had crossed the center lane and was traveling in the middle of the road. He further testified that the fog was light where the collision occurred.

In *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill. 2d 494, 504-05, before formulating its rule governing directed verdicts and judgments, this court observed:

> "*** the presence of *some* evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance. *** Constitutional guaranties are not impaired by direction of a verdict despite the presence of some slight evidence to the contrary ***."

With the above as its premise the court presented the following rule:

> "In our judgment verdicts ought to be directed and judgments entered only in those cases in which *all* of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (Emphasis added.) 37 Ill. 2d 494, 510.

Under the *Pedrick* rule, we view *all* the evidence in a

light most favorable to Walling. We cannot speculate and will not supply facts in void areas to complete the reconstruction of an accident. The controlling issue in this case is in which lane the collision occurred. If both vehicles had remained in their respective lanes, the accident would not have happened. Conversely, the collision would not have occurred but for one vehicle having crossed the center line.

Lingelbach admitted that she did not know in which lane she was at the time of impact, whereas both Mr. and Mrs. Strahorn testified that their automobile never crossed into the southbound lane and that the oncoming vehicle crossed the center line when it approached them. This testimony was not refuted or contradicted. There was no evidence presented that Strahorn was in the improper lane, that the impact occurred in the southbound lane, or that both drivers straddled the center line. All the debris discovered was found scattered on the far eastern portion of the northbound lane. Credibility of witnesses has minimum import in this case. The lack of evidence supporting Walling's case exists whether or not the jury believed Mr. and Mrs. Strahorn's testimony.

Although Walling argued that it could be inferred that Strahorn was negligent by exercising improper control and lookout and by speeding, none of these alleged acts were the proximate cause of appellant's injury. We feel that the jury abandoned the domain of allowable inferences and entered the area of speculation in determining that Strahorn's negligence was one of the proximate causes of Walling's injury.

Therefore, under these circumstances we hold that the appellate court properly applied the rule expressed in *Pedrick* in concluding that the evidence was insufficient to present a jury question.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*