DELBERT HEIMBERGER, Plaintiff-Appellee, *v.* THE VILLAGE OF CHE-
BANSE *et al.*, Defendants-Appellants.

Third District   No. 3—83—0172

Opinion filed May 22, 1984.

STOUDER, P.J., concurring in part and dissenting in part.

Ronald J. Dusenbury, Ltd., of Kankakee, for appellants.

Thomas E. McClure and Roger C. Elliott, both of McClure & Elliott, of Bourbonnais, for appellee.

JUSTICE ALLOY delivered the opinion of the court:

The village of Chebanse and the individual members of the village board of trustees appeal from the judgment of the circuit court, after a bench trial, finding them guilty of conversion and assessing damages in the amount of $7,150. The defendants also appeal from an award of attorney fees to plaintiff, Delbert Heimberger, in the amount of $3,500.

The record reveals the following pertinent facts. Plaintiff Heimberger leased a portion of property, located in Chebanse, from the Illinois Central Gulf Railroad. He used the property to store equipment and supplies in his business of recycling pallets. Based upon complaints about the condition of plaintiff Heimberger's property, the village, in September, 1979, sent him a letter. The letter, from the village clerk, informed him that his property needed to be cleaned up, as it violated various portions of the village municipal code. Another letter followed in December 1979, in which the clerk requested that Heimberger attend a meeting of the board of trustees. Although plaintiff did not attend the meeting, he did take steps to remedy the problem on his property. In the village's March 1980, letter to Heim-

berger, the clerk expressed the village's appreciation that Heimberger had cut weeds and removed old vehicles. The letter also indicated that the pallet business continued to be in violation of the code, although unspecific on what provision, and inquired as to his plans "about the building." The March 1980 letter closed by asking Heimberger to either attend the next board meeting or reply by mail. Plaintiff responded by mail, indicating that the building would be torn down by June 1 and that he intended to continue to use the property as a storage yard, although rebuilding plans had been abandoned. The board next responded by letter, dated May 14, 1980, in which a copy of their first letter, of September 1979, was enclosed, and in which the village requested that the violations be cleared up by June 1. Again, the plaintiff responded by taking some action to clean up his property, for the village board's July 31, 1980, letter again expressed the board's appreciation for Heimberger's efforts. The letter also stated that the board "would like to know if you would remove the old machinery as you promised and finish stacking, straightening, etc. soon." Another letter was sent on September 5, 1980, citing Heimberger's lack of response to the July 31 letter, and asking him to "please have the premises of your pallet business cleaned and straightened by October 1, 1980, or Village employees will do this work and you will be billed for same." No further correspondence or action was taken from September to the following spring by the village board.

The board's next correspondence with Heimberger is of May 8, 1981, and asks him to "please continue to clean up the premises of your pallet business. Some junk machinery still remains, the pallets are still stacked too high, the grass and weeds must be kept mowed, etc." The letter asked Heimberger to respond before June 1, 1981, concerning his intentions about finishing the clean-up job.

The record also contains the minutes of the August 3, 1981, meeting of the village's board of trustees, the individual defendants herein. The minutes indicate that the issue of plaintiff's property was addressed at the meeting and that there had been no response to requests for clean up, indicating "so our people [the village's] will do it. Norton will be contacted to take the junk and Paul Behrends will be contacted to clean up the pallets and debri [sic]."

On August 6, 1981, plaintiff Heimberger went to his property and found that a number of items stored on and at the premises had been removed, including saw blades, several saws, a Ford tractor, two power units for a sawmill, three electric motors, various small tools, two logs, a number of pallets, a flatbed trailer, and other assorted items. Heimberger testified at trial that his visit to the property on

the evening of August 6 was the result of a prior telephone conversation between him and Richard Yohnka, mayor and president of the board of trustees of the village. Yohnka had called him earlier in the day and informed him that the village had cleaned the property up. Yohnka also indicated that he had contacted Heimberger's son, Delbert, and Delbert was supposed to have gotten in touch with him about it. The son had not contacted plaintiff Heimberger, nor had Heimberger received any other prior notice, oral or written, concerning the board's intentions to remove the personal property from the premises of his pallet business at that time. He had never been given notice of any hearing on the proposed action. It is to be noted that the last written correspondence from the board was the letter of May 8, 1981, in which Heimberger was asked to inform the board of his plans. Nothing in the letter set a hearing date for the matter or informed Heimberger that the property would be confiscated and removed if he did not act.

When Heimberger, through counsel, requested the return of the property from the village, he was informed that the village did not have the property. Evidence at trial indicated that the value of the personal property removed from the premises totaled $7,150. Other testimony on behalf of plaintiff came from his son and his wife. The son testified that the mayor, Yohnka, had contacted him on August 4, 1981, and informed him that the board had voted to clean up the property. The son, who did not live with his father, told Yohnka to contact his father about the matter, and attempted to give Yohnka the phone number. Yohnka hung up. Heimberger's son also testified that he did attempt to contact his father, to relay the news, but was unsuccessful until after the removal had been accomplished. Heimberger's wife also testified, stating that she received a phone call from Yohnka at about 6 p.m. on the night of August 6. Yohnka told her that the village had voted to give the machinery away, by having someone come and take it. Yohnka also informed Mrs. Heimberger that the persons had already taken the machinery and the pallets would also be taken unless they were removed. He indicated that the equipment had been given to a farmer. Mrs. Heimberger testified that she had never received any notice of a hearing or notice that the property would be taken.

The defendants' sole witness was Ralph Yohnka, who testified that he had called plaintiff's son and had also talked to plaintiff's wife. Yohnka stated that he had gone to the premises on August 6 and saw that the property had been removed. When questioned about the August 3 board meeting, he stated that he "didn't believe" any

board action was taken concerning plaintiff's property at the August 3, 1981, meeting. He also testified that the board had not taken any "active steps" to remove anything from the property on August 6, 1981. He also stated that he had never personally removed anything from the property. On cross-examination, faced with the minutes of the August 3 board meeting, Yohnka admitted that the matter was discussed, but stated that no motion had been made concerning the property.

After proofs and argument, the court found for the plaintiff and entered judgment in the amount of $7,150, based upon evidence as to the value of the personal property removed from plaintiff's premises. Plaintiff's complaint sounded in two counts, one for conversion, and the other for violation of civil rights (42 U.S.C. sec. 1983 (1982)), specifically plaintiff's right to due process prior to being deprived of his property. Subsequent to judgment, the court, on plaintiff's motion, also awarded attorney fees, which are available under the section 1983 count, in the amount of $3,500. From the judgment, judgment award and attorney fees award the defendants appeal.

Quite remarkably, the defendants' first argument on appeal is that there is no evidence in the record that the defendants "took any active part to take or cause to be taken the plaintiff's property." The argument is contrary to the record. On appeal, we are required to view all of the evidence and inferences therefrom in its light most favorable to the verdict winner. (*Walling v. Lingelbach* (1976), 65 Ill. 2d 244, 357 N.E.2d 530; *Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 539, 406 N.E.2d 879.) There is more than sufficient evidence for the trial court to conclude that the plaintiff's property was taken by persons acting at the direction of, and with the consent and apparent authority of, the village board. The minutes of the August 3 board meeting clearly indicated that outside persons would be contacted to remove the personal property. Yohnka informed plaintiff Heimberger that the village had cleaned the property up. Yohnka had informed plaintiff's son on August 4 of the village's intention to take action to remove the personal property if it was not cleaned up. He told Heimberger's son that the board had voted to take the action. In a phone conversation with Mrs. Heimberger, Yohnka told her that the village had voted to give the machinery away by having someone come and take it. He indicated that the machinery had been given to a farmer. In light of this evidence, we reject counsel's suggestion that the village had no part in the removal of the plaintiff's personal property. What happened appears very clear in the record. The village got tired of prodding Heimberger to clean up his premises and so they con-

tacted outside persons and told them they could have the property if they removed it. Those persons, with the consent and authority of the village, and at its direction, then took the property. We have no difficulty, on these facts, in concluding that the village board and its members exercised unauthorized control over the property of plaintiff, such as to deprive him of the property. The board's actions in "giving" the plaintiff's personal property to others were actions of unauthorized control over the property. The fact that village personnel did not actually remove the property, but that it was done by third parties contacted by the village, does not alter or affect the conclusion that the village directed the action and represented that it had authority to so dispose of the property. The court's findings that the village had caused the plaintiff's personal property to be removed from his premises is amply supported in the record. The judgment of the trial court is not against the manifest weight of the evidence. Nor do we find the verdict excessive. As regards the award of damages, such assessment is within the discretion of the fact finder, here the trial judge. In the instant case, the evidence in the record supports his conclusions as to damages, and we find no basis to alter the award.

■■ The defense next contends that certain matters in defense, not raised before the trial court, preclude its liability in this case. They rely now upon section 11—20—13 of the Illinois Municipal Code (Ill. Rev. Stat. 1981, ch. 24, par. 11—20—13), respecting municipal authority to remove garbage and debris, and upon a municipality's common law power to abate a nuisance. As noted, however, these defenses and theories were not raised in the trial court. It is incumbent upon counsel to set forth, before the trial court, those matters and issues in defense, if they are to be relied upon on review. Under established rules of appellate review, those matters not raised below are waived. *Kaufman & Broad Homes, Inc. v. Allied Homes, Inc.* (1980), 86 Ill. App. 3d 498, 408 N.E.2d 91.

■ Finally, we turn to the issue of attorney fees. The defendants contend that the award of fees must be reversed because there was no express finding that the plaintiff had prevailed on his section 1983 claim. While it may be inferred from the record that the basis of the fees award was the court's finding that a civil rights violation had been proven, the judgment order does not indicate the basis for the award. Accordingly, we will remand to the trial court for the purpose of having the court specifically indicate the basis for the fees award.

■ ■ ■ In the interests of avoiding another appeal, however, we will address the issue, briefed by the parties, of whether the evidence is sufficient to sustain a finding of a section 1983 violation. We find

the record sufficient to support that finding. Due process requirements are clear. As this court recently stated:

"Due process is not an inflexible standard and 'does not require a trial-type hearing in every conceivable case of government impairment of private interest.' [Citation.] Nonetheless, due process requires that 'at a minimum *** deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' [Citation.] The notice must be reasonably calculated to convey the necessary information and to afford the interested parties a reasonable time for a hearing. [Citation.] Those parties must be given notice and an opportunity before the deprivation takes place, unless there exists extraordinary circumstances requiring immediate action to protect a valid governmental interest. [Citations.]" (*Valdez v. City of Ottawa* (1982), 105 Ill. App. 3d 972, 975.)

In the instant case, plaintiff was never given an opportunity to be heard on the question of taking, either before or after the village took action. The village's reliance upon its prior correspondence with the plaintiff in seeking to show notice is woefully lacking. The last letter received by Heimberger from the village, that of May 8, 1981, requested that he inform them of his plans. Previous letters had included gratitude and appreciation for his continuing efforts. The May 8 letter said nothing about what specifically the village was objecting to, nor did it state that there would be a hearing on the matter at which the village's seizure and disposal of the personal property would be addressed and at which Heimberger could attend and present his viewpoint and position. He was never informed at any time significant to the actions of the village herein that he was facing the seizure and disposal of his property should he not clean up the property. Nor can the informal telephone call to his son, two days before the action, satisfy the requirements of reasonable notice. Even if the village had given Heimberger sufficient notice of its intentions, he was never afforded an opportunity to be heard about the situation after being informed of the specific charges against him and the proposed action by the village. The record supports a finding that the village and these defendants violated Heimberger's due process rights in the matter in which they proceeded.

The judgment of the circuit court of Kankakee County is affirmed, except the award of fees, and we remand for the purpose of having the court specify the basis for that award.

Affirmed in part and remanded with directions.

BARRY, J., concurs.

PRESIDING JUSTICE STOUDER, concurring in part and dissenting in part:

I concur with the majority that the judgment of the trial court on the conversion claim was not against the manifest weight of the evidence and that the award of damages was not excessive, but I must disagree with the majority on the issue of whether attorney fees were properly awarded. As the majority states, the award of attorney fees must be based upon a finding by the trial court that a violation of section 1983 of the Civil Rights Act occurred. I do not agree with the majority that the trial judge could ever have found the village of Chebanse guilty of a violation of section 1983 upon which to base his award of attorney fees. I base my belief upon the United States Supreme Court's decision in *Parratt v. Taylor* (1981), 451 U.S. 527, 68 L. Ed. 2d 420, 101 S. Ct. 1908, where the Supreme Court found a conversion by State prison officials who were not acting as a result of an established State procedure did not require a predeprivation hearing and, therefore, that no section 1983 violation could be maintained against the State. The Supreme Court reasons that an adequate remedy existed under State law and a post-deprivation hearing was all that was required. Like prison officials in *Parratt*, who confiscated an inmate's hobby materials, the village board of Chebanse was not acting under the authority of any municipal ordinance or State law or procedure. As the United States Supreme Court stated in *Parratt v. Taylor* (1981), 451 U.S. 527, 543, 68 L. Ed. 2d 420, 434, 101 S. Ct. 1908, 1917:

> "Indeed the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established State procedure. There is no contention that the procedures themselves were inadequate *** Moreover, the State of Nebraska has provided respondent with the means by which he can receive redress for the deprivation."

Here the State of Illinois provided adequate redress. It is often said due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." However, the United States Supreme court has clearly rejected the proposition that this hearing must necessarily take place prior to the deprivation. I do not believe that this situation mandated a predeprivation hearing both because of the distinction made by the Supreme Court in *Parratt* and the ade-

quate conversion remedy provided by Illinois. This plaintiff has had all the process which is due. him, and no section 1983 claim can now stand. It has long been the law in this State that attorney fees cannot be taxed as costs absent statutory authority. (14 Ill. L. & Prac. *Costs* sec. 54 (1968).) Therefore, I would not have remanded this case but instead I would have reversed the award of attorney fees outright.