KENNETH C. BUTTON, Incompetent, by Anthony Curio, Conservator of the Estate of Kenneth C. Button, Plaintiff-Appellee and Cross-Appellant, v. ELMHURST NATIONAL BANK, Ex'r of the Estate of Charles Leonard Button, *et al.*, Defendants-Appellees (Beverly Bernhardt, Defendant-Appellant and Cross-Appellee; The Department of Mental Health and Developmental Disabilities, Defendant-Appellee and Cross-Appellant).

Second District No. 2—86—0304

Opinion filed April 29, 1988.

Roy I. Peregrine, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., of Wheaton, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Kathryn A. Spalding, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Roma Jones Stewart and Shawn W. Denny, Solicitors General, and Diane M. Curry-Graspas, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Mental Health.

Gerald J. Mannix, of DiMonte & Lizak, of Chicago (Albert Koretzky, of counsel), for appellee Anthony Curio.

Ervin F. Wilson, of Elmhurst, for appellee Elmhurst National Bank.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

We filed an opinion in this case on December 10, 1987. Defendant, Beverly Button Bernhardt, filed a petition for rehearing on December 30, 1987. We granted rehearing and ordered answers and a reply pur-

suant to Supreme Court Rule 367 (107 Ill. 2d R. 367(d)). After consideration of the petition for rehearing, answers and reply, we withdraw our original opinion and file this new opinion in its stead.

This is an appeal from a declaratory judgment entered by the circuit court of Du Page County ordering that defendant Illinois Department of Mental Health and Developmental Disabilities (DMHDD) be reimbursed from the trust funds of beneficiary plaintiff, Kenneth Charles Button (Kenneth), incompetent. The trial court's grant of a monthly disbursement to defendant Beverly Button Bernhardt (Beverly), Kenneth's sister, and the award of fees to her attorney are also subjects of this appeal. The issues presented on appeal are: (1) whether an individual who has been indicted for murder and has been adjudged incompetent to stand trial and, thus, never tried, may inherit from the people he allegedly murdered, prior to trial; (2) whether the circuit court erred in ordering the trustee to reimburse the DMHDD for the care and treatment of the incompetent given that the trustee had complete discretion in the administration of the trust; and (3) whether the circuit court abused its discretion in awarding monthly distributions and attorney fees to Beverly. We affirm.

Kenneth and Beverly Button were the children of Charles Leonard Button (Charles) and his wife Vienna Roberts Button (Vienna). On February 19, 1963, Charles and Vienna each duly executed a last will and testament. Vienna's will provided that her estate go to Charles, if he survived her, otherwise to Elmhurst National Bank as trustee of a testamentary trust (the trustee) contained in Charles's will "to be held, administered and disposed of in accordance with the provisions of said trust." If Vienna survived Charles, his will provided that she would get all of his "tangible personal property" and one-half of the value of his "adjusted gross estate." If Vienna did not survive Charles, her share would go with the rest of Charles's estate to the trustee. The language of the will establishing the pertinent provisions of the trust stated:

"FOURTH:

* * *

SECTION 3: My son, KENNETH CHARLES BUTTON, has from time to time been mentally ill, and it is my primary concern that his maintenance and support be adequately provided for. I have one other child, my daughter, BEVERLY BUTTON BERNHARDT. Upon the death of my wife, or upon my death if she predeceases me, the Trustee shall hold all the Residuary Trust, as then constituted, as a single trust so long as my said son, KENNETH CHARLES BUTTON,

shall be living. In the meantime, the Trustee shall use or expend and apply so much or all of the income or principal from the Trust as the Trustee deems necessary, in such a manner as it deems best, for the medical care, support, education and welfare of either child of mine. The Trustee may use the same entirely for the benefit of one of my children to the exclusion of the other and may completely exhaust the principal of the Residuary Trust for the maintenance and support of either child of mine, rather than preserve the principal for distribution upon the termination of the trust.

Upon the death of my said son, KENNETH CHARLES BUTTON, the Trustee shall pay and distribute the Residuary Trust in equal shares to my children then living; and the living lawful issue of any deceased child of mine ***.

FIFTH: The following provisions shall apply to the Trust created under this Will:

SECTION 1: In case the income or any discretionary payments of principal become payable to a minor or to a person under legal disability or to a person not adjudicated incompetent, but who, by reason of illness or mental or physical disability, is in the opinion of the Trustee unable properly to administer such amounts, then such amounts shall be paid out by the Trustee in such of the following ways as it deems best: (a) directly to such beneficiary; (b) to the legally appointed guardian or conservator of such beneficiary; (c) to some relative or friend for the care, support and education of such beneficiary; (d) by the Trustee, using such amounts directly for such beneficiary's care, support and education.

SECTION 2: The interests of beneficiaries of principal or income shall not in any way during their respective lifetimes be subject to the claims of their creditors or others nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered."

On July 15, 1969, Kenneth shot and killed his parents. The State's Attorney obtained grand jury indictments charging Kenneth with the murder of both of his parents. At the request of the Du Page County public defender, the circuit court ordered a psychiatric examination of Kenneth to determine his competency to stand trial. Kenneth was diagnosed as schizophrenic, paranoid type. An examining psychiatrist found that Kenneth was "totally unfit" to appreciate the charges against him.

On September 23, 1969, Anthony Curio (Curio) petitioned the cir-

cuit court to adjudge Kenneth incompetent and to appoint Curio as conservator of Kenneth's estate. The estate consisted of stock and personal property in the form of guns, pistols, sabers, swords and other arms and ammunition. The stock and personal property were sold to pay for Kenneth's expenses, such as fees for attorneys defending him as to the criminal charges, attorneys acting on behalf of Curio and Kenneth's maintenance, medical and personal expenses.

On October 1, 1969, a jury found that Kenneth was incompetent to stand trial. The trial court entered judgment on the jury's verdict and ordered that he be committed to DMHDD until he was declared competent. Since then, Kenneth's condition is unchanged and the circuit court in successive hearings regarding Kenneth's fitness to stand trial found him incompetent. Presently, Kenneth is still in the custody of DMHDD and also suffers from leukemia.

The latest hearing was on November 7, 1985, after which an order was entered finding "that the defendant, Kenneth Button, is mentally ill and because of his mental illness he is reasonably expected to inflict serious physical harm upon himself or another in the near future, and, therefore, a person subject to involuntary admission under the Illinois Mental Health Code."

In 1979 the General Assembly amended the Code of Criminal Procedure of 1963 to revise the provisions concerning persons found unfit to stand trial. The amendment required the DMHDD to prepare a report on each patient in the custody of the DMHDD who had been found incompetent prior to the effective date of the amendment. (Ill. Rev. Stat. 1981, ch. 38, pars. 104—27, 104—28.) The DMHDD diagnosed Kenneth as schizophrenic paranoid chronic and stated:

> "This patient is charged with the death of his parents. Both were killed in June, 1969. He states he actually killed these two people but they were not his parents but were stepparents. He states these two people were going to send him to California to have a lobotomy. He states his own parents are alive and in Russia.
>
> Mental Status
>
> This patient is well developed, well nourished white male who is grandiose, delusional, and paranoid \*\*\*. He has delusions of persecution and also grandiosity. His judgment is poor. He lacks insight into his problem. He is insistent that the facts to support his delusions have not been brought out or discovered \*\*\* "

The report concluded that Kenneth was still unfit to stand trial and that it was highly unlikely he would ever be fit "due to the chronicity

of his condition and his grandiosity."

An order was entered February 17, 1981, pursuant to section 104—23(b)(3) of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 104—23(b)(3)) dismissing the murder indictment against Kenneth "with leave granted to the People to reinstate the charges in the event that the defendant is discharged from his commitment to the Department of Mental Health and Developmental Disabilities." J. Michael Fitzsimmons, the then State's Attorney for Du Page County, filed on January 6, 1984, an affidavit which stated that:

"5. [T]here remains the theoretical possibility that the charges previously pending against Kenneth Button might be reinstated should KENNETH BUTTON become competent.

6. I have decided, and so state for the record, that should Mr. KENNETH BUTTON ever recover his mental faculties so as to become competent to stand trial, the decision to so prosecute and the prosecution shall be referred to the Illinois Attorney General or a Court-appointed Special Assistant State's Attorney."

On August 27, 1974, Kenneth, through Curio, filed a complaint for declaratory judgment seeking a declaration of his rights under the testamentary trust. The complaint, amended several times, requested that the trustee reimburse the DMHDD for Kenneth's maintenance, support and medical expenses and pay the fees of attorneys hired to represent Kenneth's interests. Beverly and the trustee opposed the granting of the relief requested by Kenneth on the ground that he killed his parents and, therefore, should not be allowed to inherit from the people he had killed.

On December 12, 1985, the court ordered payment to DMHDD pursuant to the Attorney General's petition for a citation against the estates of Charles and Vienna Button alleging that Kenneth was entitled to inherit from these estates, and that the DMHDD was, therefore, entitled to reimbursement. On December 23, 1985, the trustee moved to vacate the order and asked the trial court to determine the rights of Charles's and Vienna's other descendants under the trust, to set a limit on payments to the DMHDD and to define which future transactions would be subject to the court's jurisdiction.

On February 13, 1986, the circuit court held that plaintiff's estate owed the DMHDD $156,872.76 and that the trust was obligated to pay the amount. Accordingly, the court ordered the trustee to pay the DMHDD. The court also held that the trustee in its discretion could pay all usual trust expenses and charges, including attorney fees,

taxes, accounting fees and other administration expenses.

On February 21, 1986, the DMHDD filed a petition for an additional award, stating that on January 1, 1986, the cost of caring for plaintiff rose from $67 per day to $86 per day. The DMHDD therefore asked the court to increase the award to the DMHDD to include the period from September 30, 1985, through February 28, 1986, and to hold that $86 is a reasonable amount for plaintiff's care and maintenance.

On March 5, 1986, Beverly filed a notice of appeal from the circuit court's order. This appeal was withdrawn on March 6, 1986, when a hearing was held to consider her petition for fees and costs. Beverly requested payment of attorney fees, costs and support from the trust of $2,500 per month. A hearing was held concerning this petition as well as the petitions for fees submitted by attorneys acting on behalf of plaintiff.

Beverly testified that she was 46 years old, divorced and the mother of three teenage children, one of whom was a freshman in college. Her former husband provides $775 per month in child support and alimony as well as the children's medical insurance. He also shares their son's college expenses.

Beverly stated that in 1985 she earned approximately $6,000 working as a music educator for two different school districts. She had also been accepted as a part-time instructor at a local community college, but had not started yet.

Beverly further testified that she had $88 in the bank and owned her own home, half of which she had purchased from her husband upon their divorce. Beverly calculated that it would take $5,937 per month to provide for her family and to retire her debts. She stated that she received $2,500 per month from the trustee to help support her, but that such amount was insufficient to maintain her family.

On cross-examination Beverly admitted that in 1985 she had received an additional $10,000 from the trust to pay off some debts. She also admitted that she had received $5,500 in trust money in 1985 to pay for some redecorating costs. Further, she stated that the trust always pays her State and Federal taxes and paid for her lawyer during the divorce.

Total distributions to Beverly from August 1977 through April 30, 1986, amounted to approximately $280,000. Total disbursements to Kenneth were zero. As of January 31, 1986, the trust assets totalled $507,171.87.

Beverly's attorney testified that he had been engaged to represent Beverly's interest prior to July 1971. He explained his billing and

stated that Beverly owed him $10,432.35. The attorney admitted that many of his hours related to obtaining disbursements for Beverly from the trust but stated that he should be reimbursed because all services were performed on Beverly's behalf.

On March 11, 1986, the court entered the following order:

"1. That the Elmhurst National Bank as Trustee under the Testamentary Trust of Charles Leonard Button shall pay $168,110.76 from said Trust to the State of Illinois Department of Mental Health and Developmental Disabilities for the care of Kenneth Button, including medical bills from the inception of said care in 1969 through February 28, 1986.

2. That the Trustee referenced herein shall also pay the monthly charges assessed by the State of Illinois for the care of Kenneth Button so long as he remains involuntarily institutionalized pursuant to Orders of this Court and that the trust fund is available to do so.

3. The trustee may, in its discretion, pay all usual and customary trust expenses and charges such as, but not limited to, taxes, trustee's fees, accounting fees, sale commissions and other ordinary administration expenses.

4. The Citation to Discover Assets heretofore served on the Elmhurst National Bank is dismissed.

5. That the Trustee's accounting is accepted as accurate and reasonable.

6. That the Trustee is further ordered to pay from the Trust to the following attorneys for attorneys' fees expended on behalf of Kenneth C. Button and Beverly Bernhardt:
 (a) To Gerald Mannix, the sum of $9,270.00;
 (b) To Ralph Gabric, the sum of $4,125.00;
 (c) To Aldo Botti, the sum of $10,725.00;
 (d) to Roy Peregrine, the sum of $10,432.35.

7. That the trustee, in its discretion, may pay sums of money to Beverly Bernhardt as they [sic] deem appropriate under the trust; however, said sums are not to exceed the amount of $1,000.00 per month without leave of Court to do so."

On April 8, 1986, Beverly appealed from the order. The DMHDD cross-appealed from that portion providing for payment to Beverly and her attorney and finding that prior expenditures were "ordinary expenses." Kenneth also appealed through his conservator on April 24, 1986.

■ Beverly's first contention on appeal is that Kenneth should not be able to inherit from his parents until there is a final adjudica-

tion of "not guilty of murder" or the indictment for murder is dismissed with prejudice. We disagree.

In 1969, at the time Kenneth shot and killed his parents, the Illinois Probate Act provided:

> "A person who is convicted of the murder of another shall not inherit from the murdered person or acquire as surviving spouse or otherwise under this Act any interest in the estate of the decedent by reason of the death, but the estate of the decedent descends and shall be distributed in the same manner as if the person who murdered the decedent died before the decedent." (Ill. Rev. Stat. 1969, ch. 3, par. 15a.)

And:

> "When a devise or legacy is to a person who is convicted of the murder of the testator, the devise or legacy is void as to that person and descends and shall be distributed in the same manner as if that person died before the testator." (Ill. Rev. Stat. 1969, ch. 3, par. 49a.)

In this case, Kenneth was not brought to trial given the fact that he was found unfit to stand trial. The indictment for murder against him was dismissed with leave to reinstate. We agree with Beverly that such a factual situation has not previously been addressed by the appellate court. However, there are Illinois cases which have interpreted the above statute to guide our analysis. In *In re Estate of Buehnemann* (1975), 25 Ill. App. 3d 1003, 324 N.E.2d 97, the court stated that the legislature left no doubt as to its intention regarding under what circumstances an individual may be precluded from inheriting by stating that *"[o]nly the conviction* of murder *** would deprive the widow of her award."* (Emphasis added.) (*In re Estate of Buehnemann* (1975), 25 Ill. App. 3d 1003, 1006, 324 N.E.2d 97, 99.) The court refuted appellants' arguments regarding the common law and public policy that "no man may profit by his own wrongdoing" by asserting that appellants misunderstood "the basic tenet of criminal law that a person is presumed innocent until proven guilty in a court of law pursuant to constitutional and statutory process." (*In re Estate of Buehnemann* (1975), 25 Ill. App. 3d 1003, 1006, 324 N.E.2d 97, 99; see also *Wall v. Pfanschmidt* (1914), 265 Ill. 180, 106 N.E. 785; *In re Estate of Seipel* (1975), 29 Ill. App. 3d 71, 329 N.E.2d 419 (prior to the enactment of sections 15a and 49a, the Probate Act did not bar even one convicted of murder from receiving an inheritance, devise, or legacy from the victim).) This interpretation of the statute to require a conviction for murder before barring an heir from receiving his inheritance was further reinforced in *In re Estate of Seipel* (1975),

29 Ill. App. 3d 71, 329 N.E.2d 419. The court held that a widow who was convicted of voluntary manslaughter for causing the death of her husband was entitled to inherit from her husband as the manslaughter conviction operated as "an acquittal as to murder, so that her conduct falls outside the specific language of section 15a." (*In re Estate of Seipel* (1975), 29 Ill. App. 3d 71, 73, 329 N.E.2d 419, 421.) Thus, it is apparent that the statute in effect at that time permitted inheritance or the taking of a devise or legacy absent a murder conviction.

█ Beverly makes an additional contention under this first issue which requires comment. The Attorney General represents the DMHDD in its effort to obtain payment for Kenneth's care from the trust. In addition, the Du Page County State's Attorney has indicated that any possible future criminal prosecution of Kenneth for killing his parents will be referred to the Attorney General. Beverly argues that, because Kenneth's conviction of murdering his parents would preclude the DMHDD from obtaining money from the trust for Kenneth's care, the Attorney General has a conflict of interest when arguing that the DMHDD may obtain money from the trust for Kenneth's care because he has not been convicted of murder. Because of this, Beverly contends:

> "[The DMHDD] should not be permitted to charge the victim's [*sic*] estate for maintenance of the killer so long as its lawyer, the Illinois Attorney General, retains the right to reinstate the murder indictment pursuant to Court Order. The Attorney General should either withdraw from one case or the other ***, or waive his right to prosecute the killer."

Beverly has cited no authority in support of her contention that the Attorney General has a conflict of interest or the appropriateness of her proposed remedy (barring the DMHDD from receiving payments from the trust so long as its lawyer has the conflict of interest) for the conflict. This argument has, therefore, been waived and will not be considered. 107 Ill. 2d R. 341(e)(7); *In re Marriage of Anderson* (1985), 130 Ill. App. 3d 684, 688-89, 474 N.E.2d 911, 914; see also *People v. Ramirez* (1983), 98 Ill. 2d 439, 472, 457 N.E.2d 31, 47 (issue not considered in death penalty case because defendant failed to comply with Supreme Court Rule 341(e)(7)).

Next, Beverly argues that the trial court erred in that it usurped the trustee's discretion when it ordered that the trustee reimburse the DMHDD from the testamentary trust for the care and maintenance of Kenneth. We disagree.

There are two primary questions to be considered under this issue. The first is whether the applicable statute permits the DMHDD

to obtain reimbursement from the trust. The second is whether reimbursement of the DMHDD from the trust would accord with the settlor's intent. Both of these questions are controlled by *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 500 N.E.2d 29, which was decided after all of the briefs in the case at bar were filed.

The applicable statute provides in pertinent part:

> "Each recipient of services of the Department, and the estate of such recipient, is liable for the payment of sums representing charges for services to such recipient at a rate to be determined by the Department in accordance with this Act." (Ill. Rev. Stat. 1985, ch. 91½, par. 5—105.)

The DMHDD takes the position that this provision encompasses reimbursement from trusts similar to the one at bar. We agree.

█ Beverly contends that given the fact that the trustee under the present trust may expend the funds "in such manner as it deems best," the trustee is not obligated to reimburse the DMHDD in that Kenneth would continue to receive the same care even under circumstances of nonpayment on the part of the trustee. Beverly's argument is contrary to several decisions from both this State and other jurisdictions. Recently, in *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 90, 500 N.E.2d 29, 31, the Illinois Supreme Court held that a spendthrift trust may be considered to be part of "the estate" of an incompetent for purposes of section 5—105, since it is sensible to hold that the expense to the Department of caring for and supporting a recipient of its services should be grounds for a claim against the beneficiary of a spendthrift trust. Furthermore, the court stated that such a holding is consistent with the long-standing policy permitting the State to seek payment for its costs from those recipients of services who can afford to pay. *Department of Mental Health & Developmental Disabilities v. First National Bank* (1982), 104 Ill. App. 3d 461, 466, 432 N.E.2d 1086, 1089; *In re Estate of Bee* (1976), 44 Ill. App. 3d 13, 14, 357 N.E.2d 845, 846; see also *Kough v. Hoehler* (1952), 413 Ill. 409, 418-19, 109 N.E.2d 177, 181-82.

█ Both the *Phillips* and the *First National Bank* decisions cite with approval cases from other jurisdictions which hold that a trustee may not avoid paying for or contributing to the support of a beneficiary under a section 5—105 type statute, simply because the terms of the trust grant the trustee absolute discretion in distributing the income of the trust. (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 90, 92, 500 N.E.2d 29,

31-33; *Department of Mental Health & Developmental Disabilities v.* *First National Bank* (1982), 104 Ill. App. 3d 461, 464-65, 432 N.E.2d 1086, 1088; *In re Estate of Lackmann* (1958), 156 Cal. App. 2d 674, 320 P.2d 186; *Bureau of Support v. Kreitzer* (1968), 16 Ohio St. 2d 147, 243 N.E.2d 83.) The rationale employed by the *Kreitzer* court is of particular relevance to the instant case. The Ohio court stated:

> "Admittedly, the beneficiary of a discretionary trust for care, comfort, maintenance or well-being is endowed with no property which an ordinary creditor may reach. When, however, a fiduciary's discretion, notwithstanding it is 'absolute or sole,' is to be exercised with reference to needs for care and maintenance, that discretion cannot be wholly beyond a review which measures the actual need against the standard by which payments may be made." (*Bureau of Support v. Kreitzer* (1968), 16 Ohio St. 2d 147, 150, 243 N.E.2d 83, 85.)

In the context of a situation where the State provides for the beneficiary's necessities such that the trustee may contend that the beneficiary is not destitute so long as the State in fact maintains her, and, therefore, there is no need for the trustee to disburse funds to the State agency, the Ohio court stated:

> "By the trustees' reasoning, no one furnishing the barest necessities of life to a destitute *cestui que trust* could recover the reasonable value thereof from the trust on the theory that once the necessities are given, no state of need exists." (*Bureau of Support v. Kreitzer* (1968), 16 Ohio St. 2d 147, 151, 243 N.E.2d 83, 86.)

Therefore, the current state of the law in Illinois permits the DMHDD to obtain reimbursement from a trust having a spendthrift clause.

That the statute permits the DMHDD to seek reimbursement from a service-recipient's spendthrift trust is not dispositive of whether the DMHDD is entitled to reimbursement from the trust at issue. That depends upon the intent of the settlor. See *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 93-95, 500 N.E.2d 29, 33-34.

A court's primary concern in construing a trust is to discover the settlor's intent. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198, 1201; *Vournazos v. Vournazos* (1979), 71 Ill. App. 3d 672, 675-76, 390 N.E.2d 19, 21.) For purposes of construing the trust, the settlor's intent is determined as of the time the instrument is executed. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 513, 426 N.E.2d 1198, 1201; *Williams v. Springfield Ma-*

*rine Bank* (1985), 131 Ill. App. 3d 417, 419-20, 475 N.E.2d 1122, 1124.) If possible, the intent of the settlor is to be determined from within the four corners of the instrument (*Eiche v. Illinois National Bank & Trust Co.* (1980), 84 Ill. App. 3d 535, 538, 406 N.E.2d 210, 212), and the court must consider the plain and ordinary meaning of the words used. (*First National Bank v. Canton Council of Campfire Girls, Inc.* (1981), 85 Ill. 2d 507, 514, 426 N.E.2d 1198, 1201; *In re Estate of Steward* (1985), 134 Ill. App. 3d 412, 414-15, 480 N.E.2d 201, 203.) After first looking at the language of the instrument itself, if an ambiguity exists, the surrounding circumstances at the time of execution may be considered by a court in determining the settlor's intent. *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 93, 500 N.E.2d 29, 33.

The terms of the trust we are construing here provide:

"FOURTH:

* * *

SECTION 3: My son, KENNETH CHARLES BUTTON, has from time to time been mentally ill, and it is my primary concern that his maintenance and support be adequately provided for. I have one other child, my daughter, BEVERLY BUTTON BERNHARDT. Upon the death of my wife, or upon my death if she predeceases me, the Trustee shall hold all the Residuary Trust, as then constituted, as a single trust so long as my said son, KENNETH CHARLES BUTTON, shall be living. In the meantime, the Trustee shall use or expend and apply so much or all of the income or principal from the Trust as the Trustee deems necessary, in such manner as it deems best, for the medical care, support, education and welfare of either child of mine. The Trustee may use the same entirely for the benefit of one of my children to the exclusion of the other and may completely exhaust the principal of the Residuary Trust for the maintenance and support of either child of mine, rather than preserve the principal for distribution upon the termination of the Trust."

As in *Phillips*:

"It is not clear from this provision whether the settlor intended to establish a fund to provide services for [the beneficiary] supplemental to the care provided by the State, or whether [the settlor's] intent was simply to provide for [the beneficiary's] support regardless of whether or not [the beneficiary was] in a public institution." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill.

2d 85, 94, 500 N.E.2d 29, 33.)

Unlike *Phillips*, the circumstances surrounding the execution of the trust at bar do not "support the conclusion that the settlor's intent was to provide that which the Department was unwilling or unable to furnish." *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 33.

In *Phillips*, the court found two circumstances supported its conclusion "that the settlor's intent was to provide that which the Department was unwilling or unable to furnish." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.) In the case at bar, the circumstances support the contrary conclusion as, contrary to Beverly's contention in her petition for rehearing, "[t]he facts in Phillips are [not] 'on all fours' with the instant case."

The *Phillips* court stated the first circumstance that supported its conclusion as follows:

"Sue Phillips [the settlor] executed the trust instrument shortly after Steven [Phillips, the beneficiary,] reached his 18th birthday. Yet section 5—105 states that '[n]o parent is liable under this Act for the services charges incurred by a child after such child reaches the age of majority.' (Ill. Rev. Stat. 1983, ch. 91½, par. 5—105.) A 'minor' under the statute is defined as a person under 18 years of age. (Ill. Rev. Stat. 1983, ch. 91½, par. 1—117.) Thus it is clear that at the time the trust instrument was executed, Steven's mother was under no legal obligation under section 5—105 to reimburse the Department for services charges, of which it may be reasonably presumed she was aware." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.)

This is not true in the case at bar.

■ The basic question to be answered is whether the settlor intended the trust to pay for Kenneth's support regardless of whether or not he is in a public institution, or to pay only for what the DMHDD is unwilling or unable to furnish. (See *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.) Relevant to this question is the circumstance of whether the settlor, at the time the document creating the trust was executed, would have been legally obligated to reimburse the DMHDD for charges for services the beneficiary received while in a public institution. For purposes of determining whether the trust was intended to support Kenneth regardless of whether or not he is in a

public institution or merely to supplement the services provided by the DMHDD, we do not believe it significant whether the settlor would have been legally obligated to reimburse the DMHDD for services provided to an individual found unfit to stand trial. (See *In re Conservatorship of Estate of Schneider* (1971), 50 Ill. 2d 152, 277 N.E.2d 870.) Rather, what is significant with respect to the settlor's intent on this point is whether in general the settlor would have been obligated to reimburse the DMHDD for services provided to the beneficiary while in a public institution. It may be reasonably presumed that a settlor was aware of charges he might be legally obligated to pay (see *Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33), and so, if a trust instrument does not provide otherwise, it is more likely the trust was intended to pay for such charges.

The instrument creating the trust at bar was executed on February 19, 1963. At that time, the relevant statute provided:

> "Each patient in a State hospital *** and the estate of such patient, is liable for the payment of sums representing maintenance charges for the care, treatment, detention and training of such patient in a State hospital ***. If such patient is unable to pay, or if the estate of such patient is insufficient, *** then the parent or parents *** of such patient is liable for the payment of such sums, or for the balance due in case less than the amount prescribed under this Act has been paid ***." .(Ill. Rev. Stat. 1961, ch. 91½, par. 9—19.)

This statute did not relieve the parents of the obligation to pay the charges after the child reached the age of majority. (Compare Ill. Rev. Stat. 1961, ch. 91½, par. 9—19 and Ill. Rev. Stat. 1963, ch. 91½, par. 12—21 (neither relieving parents of liability for the charges after the child reached the age of majority) with Ill. Rev. Stat. 1971, ch. 91½, par. 12—12 ("[n]o parent is liable under this Act for the treatment charges incurred by a child after such child reaches the age of majority") and Ill. Rev. Stat. 1985, ch. 91½, par. 5—105 ("[n]o parent is liable under this Act for the services charges incurred by a child after such child reaches the age of majority").) Therefore, at the time the instrument creating the trust at bar was executed, the settlor was legally obligated to pay for DMHDD services provided to Kenneth while in a public institution. *Cf. Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.

The second circumstance noted by the *Phillips* court on the question of the settlor's intent was stated:

"It is also significant that the trust assets would be exhausted if the Department were to prevail in its claim against the trust." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.)

Here, too, the facts of *Phillips* differ significantly from those of the case at bar.

In *Phillips*, the corpus of the trust amounted to approximately $75,000 at the time the action was filed. (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 89, 500 N.E.2d 29, 31.) "As of June 1, 1983, the total expenditure by the [DMHDD] for [the beneficiary's] support was $73,474.40, and these expenditures continue at a rate of $948 per month." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 88, 500 N.E.2d 29, 30.) Thus, it is apparent that by October 17, 1986, when the *Phillips* opinion was filed, the DMHDD's total expenditure for the support of the beneficiary would have exceeded the total assets of the trust. Since the trust had only one beneficiary (not counting remaindermen), this meant that interpreting the settlor's intent as "simply to provide for [the beneficiary's] support regardless of whether or not [he] is in a public institution" (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33) would have resulted in the entire corpus of the trust being used immediately, and solely, to pay DMHDD charges.

In contrast, there are two beneficiaries in the case at bar. Beverly has received, and will continue to receive, disbursements from the trust. Moreover, substantial assets will remain in the trust after the DMHDD's past and current charges are paid. Therefore, in addition to paying current DMHDD charges, the trust may in the future provide Kenneth with things the DMHDD is unwilling or unable to furnish so long as the expenditures fall within the terms of the trust. Thus, unlike the trust in *Phillips*, the trust at bar has expended, and will continue to expend, substantial amounts for purposes other than the payment of the DMHDD's charges for the support of Kenneth.

The circumstances in the case at bar differ greatly from those in *Phillips*. We find that, under *Phillips*, the circumstances support the conclusion that the settlor's intent "was simply to provide for [the beneficiary's] support regardless of whether or not [he] is in a public institution." (*Department of Mental Health & Developmental Disabilities v. Phillips* (1986), 114 Ill. 2d 85, 94, 500 N.E.2d 29, 33.) Therefore, we find that the trial court correctly ordered the trustee to re-

imburse the DMHDD for Kenneth's maintenance.

The third issue concerns the propriety of the circuit court's ordering the trustee to pay fees to Beverly's attorney, and its order:

> "That the trustee, in its discretion, may pay sums of money to Beverly Bernhardt as they [*sic*] deem appropriate under the trust; however, said sums are not to exceed the amount of $1,000.00 per month without leave of Court to do so."

Curio and the DMHDD contend that the payment of fees to Beverly's attorney and the authorization of any distribution to her was erroneous. Beverly defends the payment of attorney fees and contends that the trial court should not have limited the trustee to distributions to her of $1,000 per month or less without court approval.

■ With respect to attorney fees, the DMHDD cites to case law regarding the propriety of awarding fees in will construction cases. Curio cites solely to a portion of a sentence in Illinois Law and Practice. As noted previously, the trust provided:

> "[T]he Trustee shall use or expend and apply so much or all of the income or principal from the Trust as the Trustee deems necessary, in such manner as it deems best, for the medical care, support, education and welfare of either child of mine."

The fees were incurred by Beverly in litigating: (1) the issue of first impression in this State regarding Kenneth's right to take under the testamentary trust after being charged with, but not convicted of, murdering the settlors; and (2) the issue of whether the DMHDD should receive payment from the trust for Kenneth's care pursuant to the terms of the trust. The DMHDD also notes that Beverly's attorney also expended hours for her on work unrelated to this litigation. None of the authority cited by Curio and the DMHDD stands for the proposition that it would be an abuse of discretion to deem those attorney fees necessary for Beverly's welfare. Since it appears, rather, that finding those fees necessary to Beverly's welfare was not an abuse of discretion, the circuit court did not err in awarding them.

■ With respect to the authorization of the trustee to pay Beverly up to $1,000 per month from the trust, both Curio and the DMHDD argue that the trial court erred because the combination of payments for Kenneth's care and distributions to Beverly of $1,000 per month would exceed the trust's income and would completely deplete the trust during Kenneth's expected lifetime. Three points need to be made with respect to this argument.

First and foremost, the parties' claims are largely based on the assumption that, if possible, the trust must be managed so as to provide for Kenneth for the rest of his life, to the exclusion of Beverly if

necessary. Reliance is placed on the language of the trust stating:

> "My son, Kenneth Charles Button, has from time to time been mentally ill, and it is my primary concern that his maintenance and support be adequately provided for."

Ignored is the language of the trust stating:

> "[So long as Kenneth is living], the Trustee shall use or expend and apply so much or all of the income or principal from the Trust as the Trustee deems necessary, in such manner as it deems best, for the medical care, support, education and welfare of either child of mine. The Trustee may use the same entirely for the benefit of one of my children to the exclusion of the other and may completely exhaust the principal of the Residuary Trust for the maintenance and support of either child of mine, rather than preserve the principal for distribution upon the termination of the Trust."

The clear intent of the settlor was that the trustee have discretion to use the trust's income or principal on either child to the exclusion of the other and was clearly not to require that the trust be managed so that it would provide for Kenneth's care for the rest of his life. It would have been contrary to this intent if the trial court had precluded the trustee from making any payments to Beverly.

Second, the $1,000 per month is the maximum the trustee can pay Beverly without leave of court. Despite the contentions to the contrary of Curio and the DMHDD, we do not know how much the trustee in its discretion will actually decide to distribute to Beverly.

Third, the DMHDD argues:

> "Beverly has, in essence, received all of the trust income for the past sixteen years. She has already received ample benefits from the trust."

The implication of this argument is that Kenneth has received nothing from the trust for the past 16 years. While this was true prior to the conclusion of this litigation, the outcome of this case results in substantial sums from the trust being expended for Kenneth for benefits he received during that 16-year period. This argument of the DMHDD is, therefore, not persuasive.

■■■ Beverly argues in her reply brief that the trustee should not have been limited to $1,000 per month in distributions from the trust for her. The argument is made for the first time in Beverly's reply brief and has therefore been waived. (107 Ill. 2d R. 341(e)(7); *International Harvester Credit Corp. v. Helland* (1986), 151 Ill. App. 3d 848, 854, 503 N.E.2d 548, 552.) We note further that if the trustee should wish to distribute more than $1,000 per month to Beverly, the order

permits the trustee to do so if it obtains leave of court.

Thus, we find no reversible error with respect to the provisions of the circuit court's order regarding distributions to Beverly. Those provisions of the order are affirmed.

 Two issues concerning the trustee, argued by Curio on cross-appeal, remain to be addressed. First, Curio argues that the trial court erred in not surcharging the trustee personally for the attorney and conservator fees of Kenneth, and for "excessive expenditures" for Beverly. Curio never raised this issue in the trial court, and it is waived. (See, *e.g.*, *Durr v. Stille* (1985), 139 Ill. App. 3d 226, 228, 487 N.E.2d 382, 383; *Printpack, Inc. v. Container Technologies, Inc.* (1984), 124 Ill. App. 3d 568, 575, 464 N.E.2d 298, 303; *Heimberger v. Village of Chebanse* (1984), 124 Ill. App. 3d 310, 315, 463 N.E.2d 1368, 1371.) Contrary to Curio's argument, the trustee's request that it be released and discharged from any and all liability did not preserve the issue raised for purposes of review, where Curio never contended in the trial court that the trustee should be surcharged. We therefore will not consider Curio's argument that the trustee should be surcharged personally.

 Second, Curio contends that "the trial court erred in approving the trustee's accounting as reasonable" because "the trustee failed to present any evidence that its expenditures for Beverly Bernhardt were necessary and were not wasting and destroying the estate available for Kenneth Button." Again, Curio never raised this issue in the trial court, and, so, he has waived it. (See, *e.g.*, *Durr v. Stille* (1985), 139 Ill. App. 3d 226, 228, 487 N.E.2d 382, 383; *Printpack, Inc. v. Container Technologies, Inc.* (1984), 124 Ill. App. 3d 568, 575, 464 N.E.2d 298, 303; *Heimberger v. Village of Chebanse* (1984), 124 Ill. App. 3d 310, 315, 463 N.E.2d 1368, 1371.) We, therefore, will not consider this issue.

 We note, however, that counsel for Curio has drawn certain factual conclusions not supported by the record in the course of his argument of this issue. For example, counsel states:

> "The trustee's accounting indicates that it allowed her [Beverly] to determine what was necessary and that it exercised no independent judgment whatever in providing her with money exceeding the income of the trust and depleting the funds that should have been available for the incompetent."

The accounting does not support that conclusion. All the accounting indicates insofar as disbursements to Beverly are concerned are the dates and amounts of the disbursements actually made to her. It does not indicate what, if any, requests Beverly made or the basis on which

the trustee made the disbursements. In fact, one could conclude that counsel's assertion regarding the trustee's performance is very likely untrue, since Beverly testified to requests she made which the trustee refused. Counsel also states:

> "The trial court's limitation of $1,000 per month to Beverly Bernhardt in the light of her present circumstances indicates that the trial court would have disallowed the exorbitant expenditures since 1978."

This, too, is not necessarily true. The trial court never expressed a view of the propriety of the disbursements to Beverly prior to the order it entered and was very careful to say that the evidence did not support a finding of abuse of discretion by the trustee.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and NASH, JJ., concur.